Stone, J.
The conclusions of fact, found and stated by the District Court, are, we think, supported by the testimony. Upon the questions now open for examination, it is insisted, on behalf of the plaintiff in error:
I. That the assessment was unauthorized by the stature in force at the time it was made; and that, under that statute, suit to recover the amount due, or to enforce the lien, could only be brought by, and in the name of the municipal corporation.
II. That the petition upon which the trustees ordered the improvement was not signed by two-thirds of the resident lot-owners, and that all the proceedings were therefore unauthorized and void.
III. That District Court erred in holding that the plaintiff in error was estopped from setting up that defense.
IV. That the items for engineering, advertising, and attorneys’ fees were wrongfully included in the assessment, and •carried into the judgment.
*592 1. The act of May 8,1852, to provide for the organization, of cities and incorporated villages, as amended and in force-at the time the proceedings were had for the improvement of the street referred to, authorized the trustees of municicipal corporations of this class to make such improvement, and to assess the cost thereof upon the abutting lots. It provided also that such assessment should be a lien upon the lots thus charged, and that the lien might be enforced by suit, either in the name, of the corporation, or in the-name of any person to whom the corporation directed payment to be made. S. & C. 1493, secs. 30, 45.
It was competent, therefore, under the provisions of this-act, for the trustees to direct the assessment to be paid to the contractor doing the work, and competent for him to-maintain an action in his own name to collect the amount due. The claim thus due him he could assign, and in such case, the suit would properly be brought in the name-of the assignee. Ernst v. Kunkle, 5 Ohio St. 520.
The act of 1852, and the amendments thereto, were repealed by the municipal code, which was passed May 7, and took effect July 2,1869. 66 Ohio L. 145. The assessment now in controversy, having been made after the code-took effect, the objection taken is, that it could only be-made in the manner and subject to the limitations required by that act, and that suit to enforce the lien could be-brought only by the municipal corporation, as provided in section 547.
The objection is not well taken. Whatever would otherwise have been the effect of the repeal of the former statute, the case falls, we think, clearly within the saving-clause of the repealing act. Section 725 provides, “ that no rights or liabilities, either in favor of or against such corporation, existing at the time of taking effect of this act, and no suit or prosecution of any kind, shall be in any manner affected by such change, but the same shall stand or progress as if no such change had been made: Provided, that where a different remedy is given in this act, which can be made applicable to any rights existing at the time- *593 of its passage, the same shall be deemed cumulative to the-remedies before provided, and may be used accordingly.”
The ordinance directing the improvement was adopted,, the contract was made, and the larger part of the work was done before the repealing statute was enacted. The-ordinance provided for charging the entire cost upon the* abutting lots. The contract made it the duty of the corporation to make the assessments, and it bound Campbell' to take them in payment for his work, and to collect them-at his own expense. The rights thus secured to the parties respectively, the section just recited declares shall not, by the change of the law, be in any manner affected.. They shall stand, and the remedies given by the new statute,, applicable to the enforcement of then existing rights, shall not, it is declared, take the place of those afforded by tkestatute repealed, but shall be deemed cumulative merely.
2. The trustees were authorized to order the improvement in question, and to charge the cost thereof upon the-abutting lots; but they were authorized to do this only upon the petition of two-thirds of tbe resideut lot-owners. 2 S. & C. 1509, see. 46. Such petition was therefore a-necessary prerequisite to the lawful exercise of the power. The record of the proceedings in this case, showing a finding by the trustees that such petition was presented, is prima facie evidence of the fact. It is not, however, conclusive. The trustees were public officers, together constituting a board, clothed, it is true, for certain purposes, with large-powers, but nevertheless of special and limited jurisdiction. They were not, by any express provision of the statute, authorized to determine conclusively, by their own action,, the existence of the facts upon which their jurisdiction depended ; and the general rule applicable to bodies of this description, acting in a special matter, out of the course of the < ommon law, is that such authority is not to be implied. Roberts v. Easton, 9 Ohio St. 98; Anderson v. Commissioners of Hamilton Co., 12 Ib. 635.
An exception to this general rule is found in those cases where the lawful exercise of the power depends upon par *594 ticular facts which are peculiarly within the knowledge of the municipal agents in whom the power is vested, and where, to call in question the existence of such facts in a collateral proceeding, would defeat the object for which the power was conferred. Commissioners of Knox Co. v. Aspinwall, 21 How. 539; Bissell et al. v. Jeffersonville, 24 How. 287; Garrett v. Auditor, 7 Ohio St. 327, and other similar cases cited on behalf of defendant, stand upon this ground, and have no application to the case now under consideration.
The facts upon this subject found by the District Court do not show, and do not authorize us to hold, that the petition upon which the trustees acted was signed by two-thirds of the resident lot-owners. Neither Mrs. Shayn or Mrs. Dusold were the owners of the lots upon which they resided. The right of each was a mere chose in action, a right which could be released, but could not be conveyed ■or incumbered. 1 Wash, on Real Prop. 251. Excluding them, it became unnecessary to determine whether their minor children, to whom the land in each case belonged, could by themselves or their guardians become petitioners within the meaning of the statute; for counting them all, •both as owners and petitioners, the requisite two-thirds is not obtained.
3. It does not necessarily follow that the plaintiff below was not entitled to recover. It was competent for the lot-owners, or any of them, to waive the defect referred to. In civil proceedings, the protection of any statutory, or even constitutional provision, may be waived, and a party may be estopped by his acts from denyiug the legality of proceedings which purport to charge him or his property. Vose v. Cochroft, 44 N. Y. 415; Hellenkamp v. City of Lafayette, 30 Ind. 142; Herman’s Law of Estoppel, sec. 554.
In this case the proceedings of the trustees were, on their face, legal and regular, and the assessment was, prima facie, .a legal charge upon the lots owned by the plaintiff'in error. 'The defect now complained of could only be shown by way of defense. The District Court held that the plaintiff in *595 error was estopped from availing himself of that defense; and looking to the whole record, we are not able to say that in so holding any error was committed. In determining the effect to be given to the assurances of the plaintiff upon which, as that court found, the contractor proceeded, regard must be had to the attending circumstances, and the relations the parties occupied with respect to the subject matter.
The contemplated improvement was peculiarly local in its character. It consisted not so much in improving as in making a street; and the primary object seems to have been to render the abutting lots accessible, and augment their value. The plaintiff was the owner of a large proportion of the lots thus situated, and was correspondingly interested in the undertaking. The project was to make the improvement at the expense of the owners of the lots thus directly and specially benefited; and this project was not only favored by the plaintiff, but he had, from time to time, actively participated in the measures necessary to carry it out. In furtherance of it he endeavored to induce the requisite action by the trustees on the petition of the 19th of August; and, as he testified upon the trial, he met with the board when the project was first moved, aüd bought out one of the resident lot-owners because he declined to sign the petition.
The petition of September 23d was subsequently presented, and the trustees, believing it to be signed by two-thirds of the resident lot-owners, adopted the necessary or-dinance directing the improvement and providing for charging the cost upon the abutting lots. Advertisement was made for proposals for doing the work, and Campbell’s bid was accepted. At this point, and before the contemplated contract had been executed, it was reported to Campbell that plaintiff would not pay. Campbell was not a resident of the district and had no knowledge of the names or number of the resident lot-owners. Upon hearing the report referred to, he went immediately to the plaintiff', told him what he had heard, and said to him that if there was going *596 to be any trouble he would not go on with the job. The-plaintiff’s reply was, “Go on with the work; the street will be paid for.” This declaration was evidently made to induce Campbell to go on with the work, and as the court below found, it had that effect. Campbell was authorized to understand it as an unconditional assurauce that, so far at least, as plaintiff was concerned, payment would bo made when the work was done — made in the way contemplated, and made without trouble. So understood, it necessarily involved a waiver of any defect there might be in the preliminary proceedings. Upon this assurance Campbell did go on. He closed his contract with the trustees; agreed to look to the assessments for his pay, and proceeded with the work. The plaintiff was a resident of the district, and saw the work, from time to time, as it progressed during the succeeding year. lie had knowledge of the fact that Gaynor afterward became interested in the contract, and expressed to him his gratification that he had come to the assistance-of Campbell; and until after the assessment was made and a controversy had arisen as to the quantity and quality of the work, it does not appear that any intimation was given by plaintiff’ that he intended to question the regularity of the preliminary proceedings.
It is urged on behalf of plaintiff in error, that the assessment is an entirety, and if invalid as to one is invalid as to-all; and it is suggested that if the assessment against Corey be enforced upon grounds not applicable to the other lot-owners, the result may be that after paying his assessment, his property will be liable to be taxed to pay the amount assessed against the others. 'Whether such result would follow, or what, in such case, would be the ulterior rights of either party, are questions which need not now be determined. If we concede that such might be the result, it by no means follows that the plaintiff below, in-order to recover as against one lot-owner, must show a state of facts which will be conclusive as to all. The statute authorizes separate actions to be brought against each to recover the amount due, and separate actions against. *597 each to enforce the lien upon the lot assessed. It may well happen, therefore, that some will be compelled to pay, while others will escalpe liability. The assessment is uot -enforced as an entirety. One may be estopped from making a defense which may be available to another. City of Burlington v. Gilbert, 31 Iowa, 356.
The case is not one, it should be noticed, which involves .the taking of private property for public use, and where, by reason of a defect in the proceedings, the benefits intended to be secured are not realized, as was the case in Sessions v. Crunkilton, 20 Ohio St. 349, cited on behalf of the plaintiff. Here, notwithstanding the defective petition, the plaintiff has the full benefit of the improvement.
4. No part of the expenses incurred by the municipal corporation for engineering, advertising, and attorneys’ fees, should have been included in the judgment. It is not necessary to determine whether, under the statutes then in force applicable to this corporation, the trustees were ■authorized to include these items in the amount assessed upon the abutting lots, as a part of the cost of the improvement. It is sufficient to say they were not expenses incurred by the contractor, and do not fall within the principle upon which he and his assignee are held entitled to protection.
The defendant, however, electing to remit the amount of these items from the judgment, and it being shown that the proper remittitur has been duly entered, this motion •must be overruled.