The City of Burlington v. Gilbert.

_____

THE CITY OF BURLINGTON v. GILBERT.

1. **Municipal corporation: IMPROVEMENT OF STREETS: ESTOPPEL.** Where a city charter provided that the councils should have power to cause to be opened, paved, and improved any street or alley on the petition of not less than two-thirds of the abutting owners, it was *held*, that a person who joined in such petition was thereby estopped from afterward claiming that the assessment of a tax for the improvement petitioned for was unauthorized and illegal on the ground that two-thirds of the abutting owners did not join in the petition. While those who did not join in the petition might not be bound, those who did are.

2. —— **MISTAKE IN SURVEY AND GRADE LINES: EFFECT ON PETITIONERS.** Where property owners petitioned for the grading of a street, stating in their petition the initial point, ascent, grade line, and point where it would strike the surface, and these were incorporated into the ordinances authorizing the improvement, it was *held*, that

The City of Burlington v. Gilbert.

the surface point mentioned in the petition and ordinance being merely matter of description, was controlled by the other calls of the ordinance respecting the initial point, ascent, and grade line, and that a mistake on the part of the petitioners as to the point on the surface where the grade line would terminate, and the consequent cutting of the street to a greater depth than was desired or beneficial to them as property owners, would not affect the legality of the improvement, nor give such owners any right of action for damages against the city, though such mistake as to the point where the grade line would terminate on the surface was made by the petitioners in consequence of an erroneous survey and plat on file in the office of the city engineer.

3. —— ESTABLISHMENT AND CHANGE OF GRADES. A city having power to establish and change the grade of its streets is not liable for consequential injuries to property resulting therefrom, where ordinary care and skill are exercised. Where the statute gives damages resulting from change of grade, they must be ascertained strictly in the manner provided thereby.

*Appeal from Des Moines District Court.*

SATURDAY, APRIL 22.

THE plaintiff brought this suit in equity to recover of defendant a special tax levied upon his lots in "Peasley's Addition to the city of Burlington," to pay for macadamizing the street in front of said lots, and to make the tax levied a lien upon the lots. The appellant defended the action on several grounds, and also claimed damages by way of counterclaim for injuries to his property by reason of the grading of the street. The cause was tried by the court according to the second method, who made the following findings:

"The defendant, W. D. Gilbert, is, and was at the dates hereinafter mentioned, the owner, in fee simple, of the north half of lot 29 and lots 30, 31, 32 and 33, in Peasley's Addition, within the corporation limits of said city, and abutting on the north side of Jefferson street."

March 19th, 1866, certain of the citizens of the city,

including the defendant, presented to the city council a petition as follows, to wit:

" *To the Honorable, The City Council of the City of Burlington:*

"Your petitioners most respectfully state that they are citizens and property holders in said city; that they own real estate which will be valuably affected by the final settlement of the grade of Jefferson street; that the present established grade is not satisfactory for many reasons, among which we will mention:

"1. The same is too level between Fourth street and the railroad crossing to drain the water falling and flowing upon it.

"2. The grade in the vicinity of the intersection of Boundary street is entirely too high, being about (9) nine feet ascent to the 100 feet, between Washington and Jefferson streets.

"In consideration of the premises, we, your petitioners, pray your body to make a change of the grade of said street between the west side of Fourth street and such point further west in said street as may meet your approbation, and we suggest the following for your consideration, viz.: Commencing at the present grade on the west side of Fourth street, thence with a descending grade of (1) one foot 4 inches to the 100 feet to the west side of Seventh street, a distance of 990 feet, thence with an ascending grade of 9 inches to the 100 feet, to the present railroad track where it crosses said street, thence ascending with a grade of 4 2-10 feet to the 100 feet to the center of Boundary street, thence ascending with the grade of 8 feet to the 100 feet for a distance of 880 feet, where it will strike the surface of the earth as proposed.

"And in consideration of the re-establishment of said grade, we hereby waive, release and relinquish any and all claims for damages arising to us, in any manner, by

reason of injury to our property by the change of said grade. Attached hereto is a plat of our said property, which, together with our signatures, will indicate the property belonging to each of your petitioners.

"And when the grade has been re-established, as prayed for above, your petitioners pray you to proceed and improve said street by filling, grading, guttering and macadamizing, commencing at the west side of Fourth street, and thence west to the point where the grade to be established will strike the surface of the earth; the cost and expenses thereof, except the filling and grading, which are to be paid by the city, to be collected as a special tax, and in the manner provided by ordinance.

"Signed by W. D. Gilbert and forty-eight others."

Said petition was referred by the council to the internal improvement committee, to ascertain whether the same was in conformity to the charter and ordinances of the city.

And March 26, 1866, a report of the city solicitor was submitted that the petition was not signed by a sufficient number of citizens, but it would not affect the right of the city to change the grade. The petition was taken by the citizens and additional signers procured, and April 2, 1866, again presented to the council and action taken thereon, and the prayer of the petitioners granted; and in accordance therewith, on the same day, the following ordinance was adopted.

"An ordinance to re-establish the grade of Jefferson street west of Fourth street.

"SECTION 1. *Be it ordained by the city council of the city of Burlington, Iowa:* That the grade of Jefferson street, on the west side of Fourth street, and thence westward to a point hereinafter set forth, be changed and re-established as follows, to wit: Commencing at the present grade of Jefferson street, on the west side of Fourth street, thence with a descending grade of 1 foot 4 inches to the

100 feet, to the west side of Seventh street, a distance of 990 feet, thence with an ascending grade of 9 inches to the 100 feet, to the present railroad track, where it crosses said Jefferson street, thence with an ascending grade of 4 2-10 feet to the 100 feet, to the center of Boundary street, thence ascending with a grade of 8 feet to the 100 feet, a distance of 880 feet, where it will strike the surface of the earth.

" SEC. 2. Be it ordained that notice of the re-establishment of said grade in writing be given to all property owners who did not petition for such grade, and that they be required to file their claims for damages with the recorder within thirty days, or be forever barred.

" SEC. 3. Be it further ordained that all ordinances and parts of ordinances, in conflict herewith, be and the same are hereby repealed. *" J. L. CORSE, Mayor."*

"J. S. HALLIDAY, *City Recorder.*"

" Adopted April 2, 1866."

Two-thirds of the owners of lots and parts of lots abutting on that portion of the street of which the grade was changed, and which the council resolved to improve, signed said petition, also two-thirds of such owners on each square, except Peasley's Addition, which is not divided into squares or blocks. In this there were twenty-nine owners, counting the Thul estate, to which certain lots belonged as one (said lots were under the control of an executor, by virtue of a will; said executor, however, did not sign said petition). Counting the heirs of said estate, there were thirty-eight of these owners; only eighteen signed the petition. In pursuance of the foregoing action of the council, the internal improvement committee proceeded to receive bids for the work, and April 16, 1866, submitted the bids to the council, and May 7, 1866, the mayor entered into a contract with one McInernay, for the work to be performed under the directions of the internal improvement committee and the city engineer, and the work was com-

The City of Burlington v. Gilbert.

menced. After a survey was made by the city engineer, beginning at the initial point, and being controlled by the ascent prescribed in said ordinance No. 55, and while the work of excavation was in progress, in accordance with said survey, it was ascertained that the grade line would not strike the surface at the point designated in said petition and ordinance, to wit: 880 feet west of the center of Boundary street, but about 200 feet further up the hill, and instead of making a cut in front of defendant's house, situated on the line between said lots 31 and 32 of about 8 feet, as anticipated when the petition was presented and ordinance passed, the cut would be there 21½ feet. Whereupon the defendant and other owners similarly affected presented to the council the following remonstrance:

" *To the Honorable City Council of the City of Burlington, Iowa:*

"Your petitioners, the undersigned property owners on West Jefferson street, in said city, most respectfully represent that at the time when they asked to have said street improved, graded, etc., as it is now being done, they asked to have said ascent 8 feet to the 100 feet. They further state that their prayer at that time was based upon the information which they at that time and since received from and representations made by the city engineer, they, your petitioners, having to rely solely in their judgment and understanding of what the then-proposed grade would be.

They further state that if said street had been improved in the manner as represented by said engineer, it would have been satisfactory to all. But your petitioners now find that the engineer erred in his judgment; that petitioners, instead of having said street improved so as to benefit them, are now being greatly damaged by the improvement of said street, the manner of its improvement

being contrary to the intention, desire and interest of the petitioners. They state that they would not heed a slight error in the judgment of said engineer, but the error is of such magnitude, and does so much change the gradation of said street, that petitioners are constrained to seek relief from your honorable body.

We therefore ask that a special committee be appointed, to consist in part of members of your body, and in part of disinterested citizens of our city, to investigate our representations herein made, and examine and report upon the expediency of changing the ascent of said Jefferson street west of Boundary street, from 8 feet to 10 feet to the 100 feet, thereby reducing the cut now being made, believing as we do that an ascent of ten feet will not materially injure the street, but will tend to give the property adjoining the said street something near its proper value, which, as the street is now being made, is nearly rendered worthless. Signed by W. D. Gilbert and fifteen others. Indorsed as follows: " Rejected — Referred to special committee, Prugh, Fredrick, Dickie, and Chamberlin. Petition of G. J. Heider and others rejected on report of committee, August 27, 1866."

Said remonstrance was referred to a committee, and on report of the committee rejected by the council.

The mistake as to where the grade line of the new grade would strike the surface originated with the citizens, prior to the presentation of their petition, examining a profile of the then established grade on file in the office of the city engineer, kept there by authority and made by a prior engineer, wherein the point where the grade line touched the surface was not correctly given. It does not appear that this mistake was ever before discovered, or that the city officers had any knowledge of it.

The work of grading, filling, macadamizing, guttering and curbing was completed on the portion of Jefferson street petitioned for, the engineer being governed by the

initial point and the ascent prescribed in the ordinance; and the cut in front of defendant's property was 21½ feet.

And August 23, 1868, the council ordered the engineer to furnish the recorder an estimate of the cost of the work to enable him to make the proper assessments against the property owners liable. The engineer reported the cost of each kind of work separately, and the recorder, under the direction of the council, in accordance with a general ordinance, assessed the cost of curbing, guttering, and macadamizing, against the respective owners of lots abutting thereon, not charging them with the grading and filling or with the other work at the intersections of cross streets and alleys, and there was then assessed against the defendant his proper and due proportion of such cost, to wit: the sum of $594.94. Demand was properly made upon defendant prior to the commencement of this suit for said tax, and he neglected and refused to pay the same.

There was no notice given defendant, by the city, of the change of grade, and the defendant never filed or presented any claim for damages for such change, other than his counterclaim in this action; and upon these, the only facts proved in the case, the court bases the following conclusions of law:

Section 25 of the act to incorporate and establish the city of Burlington, approved June 10, 1845, requires the petition of only two-thirds of the owners of property to be charged with the cost of improvement, to empower the city council to levy and collect a special tax therefor, and the said petition of defendant and others was therefore sufficient for that purpose.

In the construction of said petition and ordinances, the initial point, ascent and grade line should govern, and not the surface line, when it is inconsistent with the others, and the city was justified in placing such a construction upon them, and the said grade was not therefore established, nor the work performed, in violation of said ordinance or

said petition, but in accordance with them, and defendant cannot recover damages of the city for such change of grade, having expressly waived and released them in said petition, nor avoid the special tax on the ground that the work on said street was in violation of a city ordinance, or was not the same petitioned for.

The mistake in said petition and ordinance as to where the grade line would strike the surface being an honest and unintentional mistake on the part of said citizens and the city; and the city having in good faith entered into a contract for the work, and work having been performed and liabilities incurred, it could not be compelled to rescind its action, abandon the new grade and work, or lose the right to levy the special tax, as petitioned, at least without an offer on the part of the citizens aggrieved to indemnify it for any loss it might sustain by reason of the contract already made or work done.

A decree is therefore entered requiring the defendant to pay the said tax, to wit: $594.94, with interest thereon at six per cent per annum, the filing of petition and costs of suit, and making the same a special lien on the said lots of defendant as prayed, and ordering special execution, etc.

From this decree the defendant appeals.

*P. Henry Smythe* and *T. W. Newman* for the appellant.

*The Halls* and *Baldwin* for the appellee.

MILLER, J. — I. It is insisted by the appellants that the city had no power to improve the streets at the expense of

1. MUNICIPAL CORPORATION: improvement of streets: estoppel. the defendants unless two-thirds of the property owners of each block to be improved petitioned therefor; that less than that number of the property owners on the block or square on which appellants' property is situated signed the petition asking for the improvement of the street.

The clause of the city charter cited in support of this position is as follows : " The city council shall have power to cause to be opened, paved, re-paved, or improved any street, lane, alley, market space or public landing, on petition of not less than two-thirds of the number of owners of any square or parts of a square of said city, bounding or abutting on such street," etc. Section 25 of "An act to incorporate the city of Burlington," approved June 10, 1845. The district court found that-two thirds of the owners of property to be charged with the cost of the improvement of the street had signed the petition therefor, and that in this respect the proceedings of the city council in ordering the improvement were authorized by the charter. Whether the court intended to find that two-thirds of the owners of property to be charged *in each block* had so petitioned is not clearly manifest, nor does the finding imply that two-thirds of the *aggregate* number of owners of property to be charged with the improvement, without reference to the number of owners in each block, had thus signed.

We do not, however, regard it of any importance to ascertain the true construction of this finding of the court, as we dispose of this objection on other grounds.

Had the petition not been signed by the requisite number of property owners, the action of the city upon the petition might not bind those who had not signed the petition. As to them the action of the city in assessing the cost of improvement to their property *might* be without authority and invalid. Whether it *would* be so or not, we do not decide. But in this case the defendant Gilbert, with forty-eight others, *signed and presented* the petition to the city council, asking the improvement to be made that was made, and when the city solicitor reported that the petition was not signed by a sufficient number of property owners, it was taken by the petitioners and additional signatures obtained, and again presented to the city council

for action thereon. There is no claim that the defendant signed the petition with the understanding that it was to be presented and he bound thereby, only after a sufficient number of property owners had signed it. On the othei hand, the record shows that the petition, when signed by defendant and forty-eight others, was by them *presented* to the city council, and that if the petition was not sufficiently signed he knew the fact. And we are of opinion that, after having thus signed and presented the petition to the city council, thereby inducing the city to enter upon the improvement requested in the petition, the defendant is estopped from objecting that his petition was not sufficiently signed. The defendant, by his acts, consented and agreed in writing that the city should make the improvement designated in the petition, and assess his property with its due proportion of the cost thereof, and he cannot be allowed to repudiate that agreement on the ground that other parties should have entered into the same agreement. While they may not be bound he is.

In this holding we are supported by the following cases: *The People* v. *Goodwin*, 1 Seld. 573; *Kellogg, Treasurer of Lorain county*, v. *Ely*, 15 Ohio St. 66. In the case last cited it was held, where county commissioners, acting ostensibly under "a law to provide for locating, establishing and constructing ditches, drains," etc., have established and constructed a ditch, and to pay the cost thereof have levied an assessment on lands of persons benefited thereby, and a party on whose lands such ditch has been constructed has stood by and failed to resort to any remedy, legal or equitable, until after the ditch was constructed, that a court of equity will not interfere by injunction to prevent the collection of such assessment, even if it be assumed that the proceedings of the commissioners have so far failed to conform to the law as to render them wholly illegal and void. The court in that case went much further than it is necessary for us to go in this. In that

case the defendant was held estopped by his silence. In this case we hold him to be estopped by his express consent in writing, connected with the other circumstances of the case.

II. It is insisted by appellants' counsel that the grade and improvement of the street were illegal, because en-

*2. —— mistake in survey and grade lines; effect on petitioners.* tirely different from that asked for by the petitioners. By reference to the ordinance passed by the city council, providing for the grading and improvement of the street, we see that it is in exact conformity with the petition presented by appellants and others, requesting such grade and improvement. The initial point, ascent and grade line mentioned in the petition were adopted and incorporated into the ordinance, and the work was done in accordance therewith. The only difficulty in the matter seems to be that the grade asked for and adopted did not terminate at the point on the surface where the petitioners supposed it would, and the cut was deeper than they supposed it would be, according to the grade asked for by appellants and established by the city ordinance. It is insisted on behalf of appellants that this mistake was made by them in consequence of an erroneous survey and plat of the street in the city engineer's office — said plat not showing the surface lines correctly; that, acting upon this plat as correct, the appellants asked for the grade stated in their petition, and in doing so were governed by the previous survey and the *manner in which their property would be affected.* There is nothing in the record to show that the city council were advised of the motives and objects governing the petitioners further than what was contained in the petition. The petition asked for a change of grade as therein indicated — and the improvement of the street upon the grade suggested. The city strictly followed the suggestions of the petition in the change of the grade. Whether the surface lines of the street, as shown by the plat in the city engineer's office, were called to the attention of the

council does not appear. Under the circumstances disclosed in the case the city was no more bound by any errors or mistakes in the plat than were the petitioners, nor any less so. The facts of the case, viz.: the relation of the surface to the grade asked for and adopted, the depth of cut at any given point, and the point on the surface where the grade line would terminate, were all capable of being definitely ascertained, and were equally within the reach of all the parties. There is nothing in the record showing that the city authorities, any more than the appellants, knew the true relation of the surface lines to the grade lines. Both parties, however, could, by the exercise of ordinary diligence, have known certainly all these facts. The appellants insist that the grade established was not such as they intended, or supposed would be the result. There is nothing to show that the city council was mistaken in its supposition or intention — that the result was in any respect different from the intention of the council in the passage of the ordinance. The means of correct information as to all the facts being open alike to both parties, and there being no fraud on the part of the city, there is no ground upon which the appellants are entitled to be relieved from a mistake which ordinary vigilance would have prevented. Will. Eq. Juris. 70, 71; *Penny* v. *Martin*, 4 Johns. Ch. 566; *Taylor* v. *Fleet*, 4 Barb. 95; *Butcher & Cox* v. *Buchanan*, 17 Iowa, 81.

Mutuality, also, is an important element, entering into such mistakes as will be corrected by courts of equity. *Pierson* v. *Armstrong*, 1 Iowa, per WOODWARD, J., 287; *Longhurst* v. *Star Ins. Co.*, 19 id. 364.

We have seen that it does not appear that there was any mistake on the part of the city authorities in the premises. The ordinance was passed authorizing and directing the grade precisely as appellant asked it to be done, and in the construction of its provisions the city cor rectly adopted the "initial point, ascent, and grade-line"

therein prescribed, rejecting the surface line, when inconsistent with the former.

It is insisted by appellants' counsel that it was the evident intention that the grade should terminate at a certain point, and hence the city should have been governed by that point. We fail to find in the record any evidence of such intention, at least none which will justify us in holding the finding of the court on this point to be contrary to the evidence. The surface point mentioned in the petition and ordinance is mere matter of description; this designation conflicted with the other calls in the ordinance; both could not be followed. There is no express direction on the face of the ordinance which shall be followed in case of conflict. But it seems clear to us the construction adopted by the city was, under the circumstances, the correct one, and the ruling of the district court on this point was not erroneous.

III. From what has been said, it follows that as the acts of the city in the re-grading of the street in question were

3. — establishment and change of grade. not illegal, but, as we have seen, in strict conformity with the petition of the appellant, who waived his claim for damages under the statute, the finding of the court below on the appellant's cross demand was not erroneous. The city has the right to establish grades and to change the same as it may deem proper, and in doing so, where it exercises ordinary care and skill, it is not liable for damages to those whose property is consequently injured, except as provided by statutory enactment. The owner of property thus consequentially injured has no common-law right of action against the city where the work has been performed by the city without negligence. *Coates & Patchen* v. *City of Davenport*, 9 Iowa, 227; *Freeland* v. *City of Muscatine*, id. 461; *Cole* v. *The City of Muscatine*, 14 id. 296; see, also, *Slatten* v. *D. V. R. R. Co.*, 29 id. 148. And where the statute gives damages resulting from a change of grade, they

must be ascertained strictly in the manner provided in the statute. *Cole* v. *The City of Muscatine, supra.*

The appellant waived his claim for damages in writing before the city acted in the premises. This waiver doubtless was the basis of the action of the city authorities. At least the appellants offered this as an inducement to the city's action. That action which appellant asked was taken by the city in conformity with his request and under the inducements thus presented by him, and no steps have been taken to ascertain the damages in the only manner prescribed by law.

The judgment of the district court must be

Affirmed.