HAGER v. THE CITY OF BURLINGTON.

42 661
112 305

1. **Municipal Corporations**: IMPROVEMENT OF STREETS: CITY ORDINANCE. Where a city ordinance prescribed the manner in which it should be ascertained whether a petition for the improvement of a street had been signed by a majority of the owners of abutting property, and also the method of procedure by which such improvement should be authorized by the city council, it was *held*, that a departure from the methods prescribed by the ordinance would invalidate an assessment upon an abutting property owner for the costs of an improvement, made pursuant to such action of the council.

2. ——: ——: ESTOPPEL. Nor is such owner estopped to deny the validity of the assessment by standing by and seeing the improvement made without objection, since he may have supposed its cost was to be defrayed out of the general fund.

*Appeal from Des Moines District Court.*

WEDNESDAY, APRIL 5.

THIS is an action in equity to restrain the defendant from collecting an assessment upon an abutting lot for the purpose of defraying the expense of curbing, guttering and macadamizing the street fronting the same. A preliminary injunction was granted October 23, 1873, and upon the final hearing, July 13, 1875, the injunction was made perpetual. Defendants appeal. The facts are stated in the opinion.

*Samuel K. Tracy*, for appellants.

*H. A. Kelly* and *Hall & Baldwin*, for appellee.

DAY, J.—I. The City of Burlington, pursuant to the provisions of chapter 45, Laws of the Fourteenth General Assembly, passed an ordinance, section 2 of which is as follows: "Whenever a petition, purporting to be signed by a majority of the resident owners of property abutting the portion of any street, avenue or alley thereby asked to be paved, guttered, curbed, graveled or macadamized, or for the construction of sidewalks thereon, shall be presented to the council, praying

for such improvement, the same shall be referred to the city recorder to report whether the same is signed by a majority of the resident owners of property abutting the proposed improvement. If he shall report that such majority have signed such petition, then the council may order said improvement to be made, and the actual costs thereof (except the street crossings) to be assessed to the real property abutting on the portion of the street, avenue or alley sought to be improved. If he shall report that such majority has not signed the petition, the said improvement shall not be made at the expense of the adjoining property, unless the same is ordered to be done by an affirmative vote of not less than three-fourths of the whole number of members comprising such council."

On the 28th day of April, 1873, a petition signed by eight persons was presented to the city council as follows: "We, the undersigned, resident property owners on Eighth street, would respectfully pray your honorable body to cause Eighth street, from the north side of Division street to the south side of Maple street, to be graded, macadamized, curbed and guttered."    *    *    *    *

The proof shows that at this time there were eighteen separate pieces of property abutting on the proposed improvement, owned by eighteen persons, fourteen of whom resided along the improvement, sixteen of whom resided in the city, and two of whom were non-residents. The petition was not referred to the city recorder, and he made no report respecting it, but it was referred to the internal improvement committee who, on the 5th of May, 1873, reported that they had examined the petition, that the improvement was much needed, and that they favored the granting of the request of the petition. This report was adopted. Thereupon a resolution that the internal improvement committee be instructed to advertise and receive bids for grading, curbing, guttering and macadamizing the street in question was adopted by a vote of ten to three, the number of councilmen being fourteen.

On the 26th day of May, 1873, the internal improvement committee, to whom the matter was referred, reported that P. Ryan was the lowest bidder, and on the same day by a vote of

eleven yeas and one nay, a resolution was adopted that the internal improvement committee be directed to contract with the lowest responsible bidder for the work in question, and that the cost of said work, except the grading, be assessed to the property abutting thereon. This resolution is the first one that prescribes that the cost of the work shall be assessed to the abutting owners, and it is the first one which was adopted by a three-fourths vote of the whole number of councilmen.

The ordinance above set out provides that the petition shall be referred to the city recorder, and if he shall report that a 1. MUNICIPAL majority of the resident owners of property abut-
corporations:
improvement ting the improvement have signed the petition,
of streets: city
ordinance. then the council may order the improvement to be made, and the actual costs thereof to be assessed to the real property abutting the proposed improvement, and if he shall report that such majority has not signed the petition, the improvement shall not be made at the expense of the adjoining property, unless it is ordered by an affirmative vote of not less than three-fourths of the whole number of members composing the council. In either case the ordinance contemplates the presentation of a petition to the auditor, and his report respecting the number of signers, before the improvement can be ordered at the expense of the adjoining proprietors. As was said in *Tallant v. The City of Burlington*, 39 Iowa, 543, "this is the course which the city has prescribed, and by this provision the validity of its acts must be determined." The fact that the resolution instructing the internal improvement committee to contract with the lowest bidder, provided that the cost should be assessed to the adjoining owners, and was adopted by an affirmative vote of three-fourths the whole number of councilmen, does not cure the defect. The petition was not signed by a majority, but only by one-half of the resident owners of property abutting the improvement. If this fact had been reported by the recorder to the council, as the ordinance directs, the vote of the council might have been different. Members of the council may have voted for the improvement, upon the supposition that a majority of

the resident owners of property affected by the improvement desired it to be made. Besides, the provision directing the assessment of cost to the adjoining owners, should have been embraced in the resolution which ordered the improvement, and that passed by a vote of ten out of fourteen, less than three-fourths. The principles determined in *Tallant v. The City of Burlington*, 39 Iowa, 543, seem to be decisive of this case. See, also, *City of Dubuque v. Wooton*, 28 Iowa, 571.

II. Appellant claims that plaintiff is equitably estopped from denying the validity of the assessment; that she could not stand by in silence and see the city expend public money upon her property, by the improvement of the street, without objection or protest, and still be heard to object to the validity of the proceedings.

2. ——:——: estoppel.

The plaintiff procured the injunction on the 23rd day of October, 1873. The abstract does not show when the work began, nor when the plaintiff became advised that the city intended to assess the cost of the improvement upon her property. If she knew the work was progressing, she may have supposed the city intended to pay for it out of the general fund. For aught that appears, she moved with promptness as soon as she discovered it was the intention to create a charge upon her property.

Facts are not disclosed which amount to an estoppel.

AFFIRMED.