Doyle, J.
In State ex rel. v. Mitchell, 31 Ohio St. 592, it was decided by this court that the act of March 30, 1875, under which the improvement of North High street was made, was in conflict with sec. 1, art. 13, of the constitution, and therefore void.
That was a proceeding, in mandamus, to compel the commissioners of the improvement to make an assessment upon the abutting property for the cost of the improvement, the controversy between the commissioners and the city of Columbus being as to whether the intersecting streets and alleys were to be excluded from or charged with the assessment, in common with the abutting lots. The majority of the commissioners, resisting the claim of the city, presented the question whether the act was constitutional, insisting that if it was not, the court would not compel them to make the assessment upon any of the abutting property.
Having held the act to be unconstitutional, the court was called upon to consider whether its invalidity constituted an answer to the alternative writ, in other words, to the claim of the city., ,
It was held that it did not. The commissioners were selected *295 by a vote of the property owners; they were the active agents in the construction of the improvement and incurring the large outlay for which the city issued its bonds; and they had full knowledge that the only provision made by the act of March 30, 1875, for the payment of such indebtedness, wras by an assessment upon the abutting property. So far as the commissioners were concerned, it is clear, and it was so decided, that they were estopped from raising the question under which they sought to justify their action.
This court, however, in that case extended the application of the doctrine of estoppel to others besides the commissioners, and beyond the finding that the commissioners could not on that ground refuse to make the assessment. It was held to apply to all who had participated in causing the improvement to be made, and to the extent that they were estopped from denying the validity of the assessment made to pay the cost thereof.
It is urged here that the court was not warranted in that case in deciding that any one would be estopped to deny the validity of the assessment, or including within the rule established any class of persons other than the commissioners themselves, and that all that is apparently considered or decided beyond that, found in the opinion of the court, is obiter dictum.
We think otherwise. The act under which the improvement was made provided that the commissioners should be selected from the owners of abutting property; and they were themselves, as such owners, liable for the payment of a part of the cost of the improvement. It also appeared in the case, that a petition was presented to the city council, by owners of abutting- property, asking for the privileges of the act in question, and that owners of abutting property had also voted for and elected such commissioners. ^
The court was called upon to say more than that the mere form of making an assessment should be gone through with, i. <?., that when made, it would be of some benefit to the relator; that, at least, under the facts then appearing to the court, some part of it would be collectable. If no such facts existed, or if *296 the court was oi opinion that because of the unconstitutionality of the law no estoppel could arise, and hence no assessment, however made, could be collected, it would not have done so vain and useless a thing as to require the commissioners to do an act from which no benefit could ensue, and by the omission to do which no one could be harmed. Hence, while the decision of that case is not conclusive upon any individual property owner until he is brought within the rule established, it must be considered as settled by it that the commissioners, and all who participated with them in causing the improvement to be made, are estopped from setting up the invalidity of the statute as a ground for refusing to pay.
We are not inclined to review that question, or' to disturb that decision in that respect.
Who, then, are those who caused, or participated in causing, the improvement to be made? Clearly, the participation referred to is such acts by the property .owner as, under the provisions of the lav/ in question, he was authorized, or required to do, to wit, to petition the council for the privileges of the act, to vote for the commissioners to whom the making of the improvement was to be entrusted, or to hold the position of commissioner or officer of election under the provisions of the act. These acts, or any of them, by a property owner, will bring him within the rule announced in the Mitchell case so far as to estop him from asserting the invalidity of the statute. He may, no doubt, bo estopped in many other ways. A promise to pay the assessment, if the work was done, as in Corry v. Gaynor, 22 O. S. 584, would probably have that effect. We do not mean to say that an estoppel to assert the invalidity of the statute can be based only upon signing the petition or voting for commissioners, but to hold that such acts will be effective for that purpose. Tone, it is alleged, signed the petition. The circumstances set out in the petition, under which he signed it, are not such as will'relieve him from whatever responsibility attaches to the fact of petitioning.
II. Does-the signing of the petition alone estop the owner from alleging that' the subsequent action of the city council is illegal ?
*297 In this connection, the report of the decision in State v. Mitchell, supra, needs explanation in one particular. The second proposition in the syllabus reads as follows: “Notwithstanding the unconstitutionality of the act, where the abutting lot-owners have caused a street to be improved under the act, and the bonds of the city to be negotiated to pay for the improvement, all who have participated in causing the improvement to be made are estopped from denying the validity of an assessment made in accordance with the act, to pay such bonds.”
It is asserted in the statement of facts in that case that two-thirds of the property owners had signed the petition, and White, C. J., in the opinion, assumes that to be true. No infirmity in the proceedings of the city council, or the commissioners, was shown to or considered by the court in that case. The assessment, therefore, about which the court was speaking, in tne report of that case, is one which would, were it not for the infirmity in the law, be perfectly valid. There was no other case before the court, or considered by it. There is nothing in that decision that warrants the inference, sought to be drawn from it, that jurisdictional defects, occurring after the act of the property owner, are waived by signing a petition for the improvement, without other acts of participation or encouragement. The petition in this case, fairly construed, contains an averment that two-thirds of the property owners had not petitioned, at the time of the passage of the ordinance by the city council. That allegation is admitted by the demurrer.
Under section 21 of the act, the city, council had no right to authorize the improvement until such two-thirds of the owners had petitioned the council for the privileges of the act. We have no doubt that this requirement of the law may be waived by the owners, or that they may by their acts, and under circumstances by their inaction, estop themselves from alleging its failure; but we are equally satisfied that the mere signing a petition will not have that effect.
We are aware that authorities can be found which appear to hold otherwise. Those principally relied upon axe Motz v. *298 Detroit, 18 Mich. 526; and City of Burlington v. Gilbert, 31 Iowa, 356.
The opinion in the former case was delivered by Cooley, J. The objection to the assessment was that the city had no power under its charter to make it; but several of the property owners signed a petition asking the city council to improve the street, and in compliance with such petition the improvement was ordered. By the court:
“Both the contractors and petitioners, all of whom are , residents of the city, knew that by the city charter, the city was not, and could not be made liable for the cost of the work, but that the contractor must rely upon the special assessment exclusively. There is no claim now, on the part of these petitioners, that the assessment is made on any different basis from that contemplated by them when the petition was signed. Under these circumstances they must be taken to have been willing and actively consenting parties to all the proceedings which led to the assessment and to have impliedly at least, consented that such an assessment should be made. Whether therefore the assessment be legally valid or not, there is not the least ground, on their part for claiming the interposition of a court of equity, by its extraordinary process of injunction, to stay the collection of the assessment. Their remedy, if any, is strictly legal.”
This decision is authority to support the proposition already asserted, that the petitioners waived the invalidity of the statute under which the assessment was made, but we do not understand that any defect in the proceedings of the council, after the petition was signed, was asserted in that case. Certainly nothing more is decided than that, under the circumstances of that case, equity will not afford relief by injunction against such an assessmment. •
In the case of Steckett v. The City of East Saginaw, 22 Mich. 104, decided a few years later by the same court, it was held :
“ Petitioners to a city council for a public improvement will be presumed to intend that the work shall be done under a city charter, and while they will be estopped in equity to deny *299 the power to grant their petition, Motz v. Detroit, 18 Mich. 495; yet they will not be estopped to object that the proceedings upon their petition have been conducted in disregard of the law.”
Cooley, J.,
speaking for the court, says: “ The second ground of estoppel applies to all the complainants, and it consists in the fact that they were all residents of the city of East Saginaw, and presumptively cognizant of the proceedings being taken, and of the irregularities which existed, and yet made no complaint until the work was completed, though they knew that under the charter the contractor who did the work could only be paid from this assessment. This ground of estoppel appears to us to be rather far-reaching and somewhat dangerous. To hold that a man is bound at his peril to take notice of illegal action on the part of the public authorities, is carrying the doctrine of constructive notice very much further than the authorities will warrant. ¥e think, on the other hand, that the citizen has a right to assume that the law is being obeyed instead of violated, by the public authorities, and that, at least, in the absence of any evidence of previous knowledge on his part of their unlawful action, he is in time with his protest when they proceed to deprive him of his rights under such proceedings.”
In Burlington v. Gilbert, 31 Iowa, 356, it appeared that a petition was signed and presented to the council by Gilbert and 48 others asking for the improvement. The solicitor reported that the requisite number had not signed. It was referred back to the petitioners, who obtained additional names and again presented it to the council, Gilbert evidently being an active agent therein. The work was done and an assessment made. It appeared that the petition did not contain the requisite number of signers, and the court held Gilbert estopped. It appears to lay some stress upon the fact that Gilbert and his associates in the petition, acting together’, presented the petition, and treats it as a waiver of the requirement as to the number of petitioners, or as a representation that the requisite number had signed, thereby inducing the city to enter upon the improvement requested. "We do not understand the case to hold *300 that the mere signing the petition, without the other circumstances, would have amounted to an estoppel, and it is not clear that under those circumstances the estoppel did not exist.
In Matter of Sharp, 56 N. Y. 257, the correctness of the latter decision was denied. “ A petition had been presented to said board signed by the. owners of property fronting on said street, but not a majority as required by the act of 1870. Held, that a signer of said petition was not estopped thereby from questioning the authority of the board and moving to set-aside the assessment; that he had a right to rely upon a performance of its duty by the board, which required it, before basing any action on the petition, to ascertain whether a sufficient number had signed to confer jurisdiction.”
We think this is, a correct statement of the law. Upon principle, there is no basis for the estoppel thus claimed. The owner signed a petition for the privileges of the act, for the improvement of the street. He did not thereby represent to the city that his name made the requisite two-thirds; nor waive the legal requirement that upon the presentation of the petition, the city, before basing any action upon it, would ascertain whether the legally required number had signed, and refuse to order the improvement if they had not.
We conclude, therefore, upon principle and authority, that the plaintiff in error is not estopped by the mere fact that he signed the petition, from asserting that the city did not obtain jurisdiction to order the improvement, because two-thirds of the owners had not petitioned.
We do not overlook, or in any way qualify, the rule that active participation or encouragement in causing an improvement to be made, will estop the owner engaging therein, from denying the validity of the proceedings and the assessment made in pursuance thereof. This rule is well established and is founded upon principles of justice. But the law, which requires a petition from the owners of two-thirds of the property to give the city council jurisdiction to order the improvement, will not impose upon a signer of such petition, who does nothing more, the burden of liability to pay an assessment, *301 however illegal the action of the city based upon his petition may be.
III. It is insisted however, that, the plaintiffs in error, and other property owners now resisting the assessment, are es-topped by their silence, which it is claimed, amounts to acquiescence, or a waiver of the infirmities in the statute and in the proceedings under it.
The claim is that sufficient appears in the petitions to establish such estoppel, to wit, that the plaintiffs had knowledge that the work was contemplated, ordered and completed; that they had knowledge also that the city contemplated that the cost of the improvement should be assessed upon the abutting property; and during all the time from the initiatory steps until the completion of the assessment, they were silent. That they do not claim that they gave any notice to the city that they would resist the payment, or commenced any action to enjoin the city, or the commissioners, from proceeding with the improvement, or issuing the' bonds to pay for the same. Many authorities are cited in support of this position. Within the limits of this opinion it will be impossible to notice very many of them, or to attempt to distinguish or reconcile them.
We notice at the outset that many of these cases are reports of suits in equity, governed by equitable rules, among which an important one is, that diligence is required .of suitors for its favor; that where a person is guilty of unreasonable delay in asserting his rights, or where, with knowledge of his rights, ■he takes no steps to assert them until others have entered into engagements of a burdensome nature, equity will not relieve him by injunction but leave him to whatever remedy the law affords him. This rule of equity has been, quite uniformly, applied to suits to enjoin the levy and collection of assessments for public improvements. Such was the case in Motz v. Detroit, supra, and Kellogg v. Ely, 15 Ohio St. 61, and others hereafter noticed.
But under our statute of April 10,1856 (S. & G. 1151; R. S. §§ 5818-51), an enlarged or additional remedy is given to the tax-payer. While the action under it is still equitable in its nature, a remedy is afforded by it which formerly might be *302 had only at law. The plaintiff is not required to make out a case, in cveiy element, which would be necessary without it, to entitle him to equitable relief. It is sufficient if he shows that the tax or assessment is illegal. Stephan v. Daniels, 27 Ohio St. 536 ; Steese v. Oviatt, 2d Ohio St. 253. If, in his petition under the statute he makes a case which shows the proceedings by which the assessment or tax was levied were illegal, — not merely irregular — and it is claimed he is estopped from asserting such illegality, the facts upon which that claim is based, which do not appear in. the petition, must be alleged by way of answer.
Under this statute unless the facts which amount to an estoppel are shown, the plaintiff is in time with his petition for injunction, when the tax is placed upon the duplicate or sought to be enforced against him. Pomeroy Rem. & Rem. Rights, § 712 and citations.
The petition in this action shows the assessment to be illegal for want of jurisdiction in the city council to order the improvement, because two-thirds of the property owners had not petitioned therefor. The averments upon which the estoppel is sought to be based are, that Tone was the owner of property on the street; that he signed a petition for the improvement; and that he did not institute any legal proceedings to enjoin the same, because he was a non-resident of Franklin county and ignorant that the commissioners were proceeding illegally.
There is an important element of estoppel by silence wanting here, viz., knowledge that the city council was acting illegally, or in other words knowledge of the facts upon which he now relies. The doctrine that a person remaining silent when he ought, in the exercise of good faith, to have spoken, will not be allowed to speak when, in the exercise of the same good faith, he ought to remain silent, cannot be extended to a person who is innocently ignorant of the fact upon which his right depends.
How could the property owner speak of the defect, which it is claimed he has waived by his silence, unless he had knowledge of the defect? To hold him responsible for his want of *303 knowledge, facts must be shown*which, made it his duty to inform himself.
In regard to proceedings by public officers, preliminary to levying a special assessment for the improvement of a public highway, it is only when the duty to speak is imperative, that mere silence on the part of a land owner will operate as an estoppel. Cooley Taxation, 573; Counterman v. Dublin Township, 38 Ohio St. 515. To sustain an estoppel because of omission to speak, there must be both .the opportunity and the duty to speak; the party maintaining silence must be in a situation to know that some one was relying thereon, and acting or about to act as he would not have done had he spoken and asserted his right. Vicle v. Judson, 82 N. Y. 32. We think the true rule is this: When the improvement is of a public street upon which the owner’s property abuts, before the duty to speak can be said to exist, which is so imperative that if he keeps silent then, he shall not afterwards be heard, it must be shown ;
First. That he knew the improvement was being made. Teegarden v. Davis, 36 Ohio St. 601; Stephan v. Daniels, 27 Ohio St. 544.
Second. That he had knowledge that the public authorities intended, and were making the improvement upon the faith, that the cost thereof was to be paid by the abutting property owners, and that an assessment for that purpose was contemplated. Hagar v. City of Burlington, 42 Iowa, 661. Because cities may improve the public streets out of the general fund and without a special assessment.
Third. That he knew of the infirmity or defect in the proceedings, under which the improvement was being made, which would render such assessment invalid and which he is to be estopped from asserting.
“At least, in .the absence of any evidence of previous knowledge on his part of their unlawful action, he is in time with his protest, when they proceed to deprive him of his rights under such proceedings.” Cooley, J., 22 Mich. 104; Davenport Central Railway Co. v. Davenport Gas Light Co., 43 Iowa, 301.
Fourth. Some special benefit must have accrued to the *304 owner's property, distinct from the benefits enjoyed by the citizens generally. Stephan v. Daniels, 27 Ohio St. 544; 30 Indiana, 194.
In Hagar v. City of Burlington, 42 Iowa, 661, the action was to restrain the collection of an assessment upon an abutting lot for improving the street. By the court, — “Appellant claims that plaintiff is equitably estopped from denying the validity of the assessment; that she' could not stand by in silence and see the city expend public money upon her property, by the improvement of the street, without objection or protest, and still be heard to object to the validity of the proceedings.
“ The plaintiff procured the injunction on the 23d of October, 1873. The abstract does not show when the work was commenced nor when the plaintiff became advised that the city intended to assess the cost of the improvement upon her property. If she knew the work was progressing she may have supposed the city intended to pay for it out of the general fund.” “ Facts are not disclosed which amount to an estoppel.” See also 22 Mich. 204, supra.
We have already seen that a petitioner for the improvement has the right to rely upon the city council proceeding legally and regularly upon his petition. Certainly one who is not a petitioner has the same right. There can be no waiver of this defect, and no estoppel which will prevent him from asserting it after the work is completed, if he is ignorant of it before the work is completed, unless, indeed, circumstances exist which make it his duty to inform himself, or show his ignorance to be culpable.
Just how this knowledge is to be shown it is not easy to say. That it may be shown by circumstances, in this, as in any other case where knowledge is an essential element, is no doubt true. Infirmities in the public statute he may be presumed to know, but not in the proceedings of the council or municipal officers whose acts, as we have seen, he has the right to presume are regular. Undoubtedly, those petitioning in this case for the privileges of the act, or voting for the commissioners, or acting as commissioners, or taking any active part under the statute in causing the improvement to be made, may be presumed *305 to know that the improvement is being made, and that its cost is to be assessed under the provisions of the statute upon abutting property. This presumption, in even these respects, cannot extend to those who have taken no such part, but are charged with silence only. When the above named requirements are found, and it is shown that the property owner has been benefited by the improvement, at least to the extent that he has been thus benefited, he will be estopped from denying his liability to pay. It then became his duty to act upon his rights, before the city, for his benefit, expended its money in making the improvement, upon the faith that he would pay his just share thereof. Had he spoken then, all that he now asserts as illegality would have been corrected or the expenditure stopped; or if not, then it was no„t at his peril that the expenditure was made.
It was as much his duty under these circumstances to make known his objections and assert his rights, as if he saw another person making improvements and expending money for his benefit, under the erroneous impression that he was liable and expected to pay for the same. If with knowledge of the facts he failed to speak but allowed the improvement and expenditure to be made, he would not be permitted to enjoy the benefits conferred and refuse to pay for them. He would be estopped to deny his liability to pay the fair value of what he received. There is no material difference, under these circumstances, whether the improvement is directly on the land of the owner, or upon the highway upon which such land abuts; nor that the expenditure was made by the city and not by an individual. The presumption that the city was acting in good faith, the owner’s knowledge that they were acting without authority, that the improvement was for his benefit, that it was made upon the faith that he would pay for it, demanded of him in fairness that he make known his rights and intentions then, or afterwards keep his peace. , In either case to the extent that benefit has accrued to him, equity will inquire him to make compensation.
Whether the assessment itself, is to be considered a fair apportionment of the benefits conferred, even prima facie, as *306 against an owner estopped by his silence,• or whether the limitation upon the power of assessment to twenty-five per centum of the value of the property, found in the municipal code, is applicable to this case, are questions which are not now material for us to consider. It is safe to assume, however, that no application of an equitable rule will be made, that will operate inequitably. It is not so much in cases of this kind that the estoppel, which arises from silence, gives validity to an invalid proceeding or contract, as that the party estopped will not be permitted to repudiate it, except upon equitable terms. Am. Dock Inp. Co. v. School Trustees, 35 N. J. Eq. 181. The inequity exists in claiming that the benefits, which accrued to him thereby, shall be enjoyed, without compensation. The maxim ex aequo et bonoj should govern.
The cases most relied upon by defendant do not, it seems to us establish a different doctrine. In Leibstein v. Mayor of Newark, 21 N. J. Eq. 200, the defect complained of was not in the legislation leading to the improvement, but in the defective manner in which the work was done. The doing of the work occupied a year, the character of it was such as admitted of constant inspection and was apparent to the property owners, who, with knowledge of the facts, and without objection on account of them, permitted the city to pay the contractor in full. It was held that their duty to take some action at least to apprise the city of the defects before the payment, was imperative, and a court of equity would not hear their objection, first made after the contractor’s were paid in full. Dusenbury v. Mayor of Newark, 25 N. J. Eq. 295, was of the same character and was decided on the authority of the former case. Railway v. Railway, 21 N. J. Eq. 283, was not an assessment case. It is but an application of the rule well established in equity, that if one man stands by and encourages another to lay out money in improvements, under an erroneous opinion of title, or under the obvious expectation that no obstacle will afterwards be interposed in the way of its enjoyment, the court will not permit any subsequent interference with it, by him who promoted or encouraged those acts of which he now either complains or seeks to' obtain the advantage. In *307 City of New Haven v. Fair Haven and Westville R. R. Co., 38 Conn. 422, the court finds: “ The defendant must have known that the improvement would largely benefit it in the matter of repairs, that the proceeding was under the statute, and consequently at the expense of the parties benefited. There was no reason to suppose that the city Avas doing the Avork of defendant at its own expense, or the expense of other parties. The presumption therefore is, in the absence of any finding to the contrary, not only that defendant consented to the making of the improvement by the city, but that there was’ an implied understanding that the defendant was to bear its fair proportion of the expense. We think the defendant is estopped.”
The infirmity in the assessment in that ease was that the city under its charter had no power to make it. The presumption which it is said existed, that defendants consented to the making of the improvement, and impliedly agreed to pay for it, arose from the knowledge of the defendant that it was being made, for his benefit, upon the expectation that he would pay for it, and that he Avas actually benefited thereby. Whether the benefits received by the defendant equalled the amount assessed was presented, but the court held the question was not before it, as under their statute that was to be made only by an appeal to their superior court from-the assessing board.
Kellogg v. Ely, 15 Ohio St. 64, so often cited as a case of estoppel by silence, and confidently relied upon here, is nota case of estoppel in the true sense at all. Under the very strong circumstances of that case, the court held that it Avould not restrain the collection of the tax by injunction, but would leave the plaintiff to such remedy as he may have at law. It is not placed upon the ground of estoppel, nor is there any intimation ’that any was applicable to the ease. 56 N. Y. 260. But if there was, the facts of that ease, if the ÓAvner had knowledge of the defects, make a very strong case of estoppel, and the report of the case does not show that he had not such knowledge, but the inference is very strong that he had. In Quinlan v. Myers, 29 Ohio St. 500, the fact affirmatively appears, and is found by the court, that Myers had knowledge of all the *308 facts. That he knew that the commissioners were proceeding without the consent of a majority of the land owners to be assessed, before the improvement was commenced, appears to be established by his reply to the third defense. The rule established by that case is this: “In equity wherever the rights of other parties have intervened, by reason of a man’s conduct or acquiescence in a state of things about which he had an election, and his conduct or acquiescence, or even laches, was based on a knowledge of the facts, he will be deemed to have made an effectual election ; and he will not be permitted to disturb the state of things, whatever may have been his rights at first.”
IY. The further claim is urged with great earnestness by counsel for plaintiff in error, that a complete answer to all that has been said is, that the principles thus announced do not apply to a case, where there is an entire want of power to do the corporate act. That while estoppel may exist where there is a defective execution of a power granted, neither silence nor assent will supply a total want of power.
That “ the principles of estoppel apply where the proceedings are questioned on the ground of the unconstitutionality of the statute under which they are had, as well as where they are sought to be impeached upon other grounds,” is not an open question. It was settled in State v. Mitchell, supra, and in many other cases. See Counterman v. Dublin Twp., 38 Ohio St. 515; Daniels v. Tearney, 102 U. S. 415, and cases there cited; 96 U. S. 341.
I am not quite able to see why, if inaction or silence, with knowledge, works an estoppel where a permanent improvement of a public street is made, notwithstanding the tribunal had not jurisdiction to order it, by reason of the non-existence of a condition-precedent fact, it does not work an estoppel, although the tribunal had not jurisdiction to order the improvement by reason of the unconstitutionality of the statute under which such order was made, unless indeed the act is per se illegal or malum prohibitum. In either case there was a want of power in the tribunal db initio.
"Where the infirmity of the act of the corporation is that it was ultra vires, but not prohibited by the charter or public *309 law, an estoppel may arise, either from acts or inaction, which will prevent the corporation, a stockholder or an individual dealing with it, from asserting such infirmity. When, however, it is a question not between the corporation and individuals, but the public at large is interested, as in the case of an act fer se wrong, or prohibited, no act can give it validity. See Hitchcock v. City of Galveston, 96 U. S. 341, and cases there cited; Kent v. Quicksilver Mining Co., 78 N. Y. 184.
In the latter case the rule is rule is thus stated by Folger, J., “ In the application of the doctrine of ultra vires, it has to be borne in mind that it has two phases; one where the public is concerned ; one where the question is between the corporate body and the stockholders in it, or' between it and its stock•holders and third parties dealing with it, and through it, with them. When the public is concerned to restrain a corporation within the limit of the power given to it by its charter, an assent by the stockholders to the use of the unauthorized power by the corporate body will be of nt> avail. When it is a question of the right of a stockholder to restrain the corporate body within its express or incidental powers, the stockholder may in many cases be denied, on the ground of his express assent or his intelligent, though tacit, consent to the corporate action. . . A corporation may do acts which affect the public to its harm, in as much as they are fer se illegal, or are mahom prohibitum. Then no assent can validate them. It ipay do acts not thus illegal, though there is a want of power to do them, which affect only the interests of the stockholders. They may be made good by the assent of the stockholders, so that strangers dealing in good faith with the corporation will be protected in a reliance upon those acts.” 22 N. Y. 269; 2 L. R. (Exch.) 390; 63 N. Y. 63; L. R. (7 Com. Pl) 43; Law R. (3 H. of L.) 249. . . .
“ And where third parties have dealt with the company relying in good faith upon corporate authority to do an act there is not needed that- there be an express assent thereto on the part of the stockholders to work an equitable estoppel. Their conduct may have been such, though negative in character, as to be taken for an acquiescence in the act; and when harm *310 would come to such third parties if the act were held invalid, the stockholders are estopped from questioning it. We suppose acquiescence, or tacit assent, to mean the neglect to promptly and actively condemn the unauthorized act, and to seek judicial redress, after the knowledge of the committal of it, whereby innocent parties have been led to put themselves in a position from which they cannot be taken without loss. It is the doctrine of equitable estoppel which applies to members of associated or corporate bodies as well as to persons acting in a natural capacity.”
We presume the estoppel in such case would apply as well to third persons dealing with the corporation and receiving the benefit of the ultra vires act or contract as to the members of the corporation, and would arise from the same facts.
It may be suggested here that while there was a want of power to order this improvement under the act in question, and perhaps a total want of power to issue the bonds, there was ample power vested in the corporation to make the improvement, and assess the cost of it, under valid existing law; and whatever may be said about the rights of the holders of the bonds thus issued without authority, it does not necessarily follow that the question between the city and the property-holders or the contractors doing the work is the same. Hitchcock v. City of Galveston, supra.
Y. Several of the plaintiffs allege that they were married women, owning in their own right and as their separate property, the lots or lands abutting upon the street upon which the assessment is charged. The improvement in question, being for the benefit of such separate property and relating thereto, and the benefits accruing therefrom attaching to such separate property, the-rules heretofore announced apply to them, as fully as if they were femmes sole. As such owners they were vested with the full right to petition, to vote, and to act precisely as any other owner, and whatever would operate as an estoppel were they sole, will with respect to such separate property have the same effect. notwithstanding their coverture.
YI. "What effect the signing of a remonstrance against *the *311 passage of the ordinance, and presenting it to the city council, as in Carter’s case, will have, will depend largely upon the subsequent conduct of the signers. While they are in the attitude of remonstrants, it certainly cannot be maintained that they are silently acquiescing.
The demurrers must be overruled; and those cases that were appealed from the common pleas, will be remanded to the district court, and those in which petitions in error were filed in the district court, will be remanded to the court o£ common pleas, for such further proceedings as are authorized by law.

Judgment accordingly.