The City of St. Louis v. Davidson *et al.*, *Appellants.*

1. **Municipal Corporation:** CONTRACT ULTRA VIRES BUT NOT ILLEGAL. The action of a city contracting the services of prisoners in its workhouse to a private person is *ultra vires* where neither authorized nor prohibited by its charter, but it is not illegal.

2. ———— : ————. The city could successfully interpose the plea of *ultra vires* when sued upon such contract, but it would not be within the power of the other contracting party to plead the legal disability of the city.

3. ———— : ———— : ESTOPPEL. The city is entitled to recover for the work actually done by the prisoners and not paid for, and the other party after having derived benefits under the contract is estopped from denying its validity.

*Appeal from St. Louis City Circuit Court.*—HON. GEO. W. LUBKE, Judge.

AFFIRMED.

*Smith P. Galt* and *Andrew M. Sullivan* for appellants.

(1) The findings and conclusions of law of the court were correct. Scheme and Charter, art. 3, sec. 26, par. 10. The provision of the charter of St. Louis cannot be construed to mean that the city shall have power to hire out prisoners to work for others, without doing violence to the words as therein used. On the other hand, every rule of law requires that the strictest construction be placed upon it; for it is both penal in its nature and is a part of a municipal charter. *U. S. v. Morris*, 14 Peters, 464; Sedgwick Const. of Statutes, pp. 279–288, 397; Dillon on Municipal Corp., secs. 89, (55)–91–443 (371); *Pacific v. Seifert*, 79 Mo. 215; *Fowler v. St. Joseph*, 37 Mo. 228. (2) The defendants are not estopped from setting up the want of authority on the part of the corporation to make this contract, by the fact that they have received the consideration or a part thereof. The contract was *ultra vires* and against public policy, and, when void as against public policy, there is no estoppel. *Montgomery v. Road Co.*, 31 Ala. 76; *Navigation Co. v. Dandredge*, 8 Gill & J. 319, 320; *Albert v. Bank*, 1 Md. Ch. 413; *Ins. Co. v. Ins. Co.*, 7 Wend. 31. *Ultra vires* is a good defense to an action on a bond given to secure an invalid contract. Dillon

on Mun. Corp., sec. 458 ( 382 ).   So, if a city is sued by
an innocent holder of a bond it had no power to issue,
the city is not estopped.  Dillon on Mun. Corp., sec. 553
( 426 ) ; *Railroad v. Railroad*, 10 Saw. 464.   " We may
take it as well settled that, in the law of contracts, the
first purpose of the courts is to look to the welfare of
the public ; and, if the enforcement of the agreement
would be inimical to its interests, no relief could be
granted to the party injured, and that even though it
might result beneficially to the party who made and
violated the agreement."    Greenhood on Public Policy,
p. 2 ; *Crawford v. Wick*, 18 Ohio St. 190.

*Leverett Bell* for respondent.

( 1 )  The contract for the employment of the
inmates of the St. Louis workhouse at brush-making,
on which this action is based, is not open to any objec-
tion in point of law.   The constitutionality of the con-
vict lease system has received the attention of the courts
and the law-writers, and is sustained.  *Georgia v.
Nelms*, 65 Ga. 499 ; *Mason Co. v. Jellico Co.*, 87 Ky.
467 ; Tiedeman's Police Power, 98.   The provisions of
the St. Louis ordinance and contract on the subject,
above set out, show that the system in St. Louis is sur-
rounded with proper safeguards, and is conducted with
the purpose of ameliorating the condition of the pris-
oner, and is not in any respect contrary to public policy
or good morals.   ( 2 )  The defendants having enjoyed
the fruits of the contract are estopped to deny the
validity thereof.   *Green v. Railroad*, 82 Mo. 653 ;
*Middleton v. State*, 120 Ind. 166.

SHERWOOD, J.—Action on bond for $2,000, given
by Davidson to the city to secure the performance of a
contract on his part, which contract was made with the
city and purported to confer power on Davidson to
work the prisoners in the workhouse, at so much per

head per day. After working the prisoners for some months under this contract, Davidson abandoned it, and this action is brought to recover from him and his sureties the amount due the city for labor of prisoners thus employed and not paid for.

The separate answers of defendants were identical in terms, and set up the defense that the alleged contract was illegal and void as against public policy; that it was void because the city has no power or authority to make the same, and, therefore, they were not liable thereon.

The case was tried by the court sitting as a jury, and a special verdict was rendered, upon evidence tending to support it, as follows: For services actually rendered and unpaid for, by female prisoners, at the rate of twenty cents per day, and male prisoners at sixty-five cents per day, with interest, $432.10. For drawing holes in brushes at ten cents per one thousand, with interest, $620.64; making a total verdict of $1,052.74.

The court refused to give defendants' declaration, that, under the law and the evidence in the case, the plaintiff could not recover; but gave a declaration of law of its own motion, which was in substance that the city had no power to make said contract, and that it was void; that the plaintiff was not entitled to recover any of the penalties provided therein, for failure to employ prisoners; but that it was entitled to recover for the work actually done by the prisoners, and not paid for by Davidson; that, as to such work, the defendants were estopped to deny the validity of the contract. Defendants' motion for a new trial having been overruled, the case comes here by appeal.

Paragraph 10, of section 26, article 3 of the city charter, so far as necessary to quote it, is as follows: "Every person so committed to the workhouse, or such other place aforesaid, shall be required to work for the city at such labor as his or her health and strength will

permit, within or without said workhouse, or other place, not exceeding ten hours each working day ; and for such work the person so employed shall be allowed, exclusive of his or her board, fifty cents per day for each day's work, on account of said fine and costs.''

At the time Davidson made the contract aforesaid, the city had passed ordinance 47, section 1763 of which authorized a contract of the kind made in the case at bar. .

Was the city entitled to recover for the work actually done by the prisoners, and not paid for by Davidson ?  And was the latter estopped to deny the validity of the contract ? are the questions arising on this record.

It will have been observed that the charter of the city while it does not *permit*, yet does not *prohibit*, the making of such a contract as the one before us, so that although the contract is *ultra vires* the corporation, yet it is not illegal because not *prohibited* by the charter. This is a distinction clearly marked out by the authorities.    2 Dillon. Mun. Corp  [ 4 Ed.] sec. 936 ;  *McDonald v. Mayor*, 68 N. Y. 23 ; Bigelow on Estop. [ 5 Ed.] 685.

And though a city might successfully interpose the plea of *ultra vires* when  sued upon a contract, yet it does not thence follow that a party who contracted with such city can, when sued on the contract, successfully interpose the plea of incapacity on the part of the city to make such a contract, such contract not being illegal in the sense already indicated.

In instances of this kind the plea of legal disability of the opposite contracting party is as much out of the power of a defendant to make as would be a plea of the minority of the other party in similar circumstances, something of which no one can advantage himself, except the party making it.    Bigelow on Estop. [ 5 Ed.] 465 ;  *Oregonian Ry. Co. v. Railroad*, 10 Saw. 464.

But upon a yet broader ground the defense set up in the answers cannot be maintained ; the contract was not prohibited by law.   The principal in that contract

has derived benefits under it; he cannot retain those benefits and repudiate the source from which they spring by denying the validity of the contract in which they originated. In short, he is' estopped to grasp the benefits of that contract with one eager hand, while thrusting aside its burdens with the other.

The principle here asserted is one promotive of fair dealing, which is the basis of estoppels, and it is good law as is exemplified by many adjudications. Thus where common council of the city of Hoboken, without any legal authority, created the office of collector of assessments for street improvements, and appointed Harrison as such collector, who executed his official bond, as such, with the appellants as sureties. He collected a large amount of money as such collector, for which he failed to account, and his sureties sought to defend an action on his bond upon the ground that the act of the common council in creating the office and in appointing Harrison was *ultra vires* and void. The court held that the common council had no power to create such an office, but held, also, that Harrison and his sureties were estopped from denying the validity of the ordinance creating the office and requiring him to collect the money. *Mayor v. Harrison*, 30 N. J. L. 73.

To a similar effect is *Middleton v. City of Elkhart*, 120 Ind. 166. So, too, in *Hendersonville v. Price*, 96 N. C. 423, where a party executed his bond to a municipal corporation for a license tax instead of paying cash therefor "in advance" as required by the law; and upon this it was ruled that, though the commissioners of the town had *no authority* to take a bond in *lieu* of the money, yet that neither the defendant nor his sureties were in a position to deny their liability on the bond; that the taking of the bond was not prohibited by law, nor the consideration thereof illegal; the principal in the bond had obtained thereby a license and enjoyed all the benefits that the payment of the tax would have given him, and, therefore, he and his

sureties were estopped to defend against an action on the bond; the court in the course of their remarks quoting with approval this extract from a text-writer heretofore cited : "Though a contract be in fact wholly *invalid* when executed, still (supposing it not to be prohibited by law as relating to some illegal transaction), if it be acted upon afterwards by the parties to it as valid, they will, if *sui juris*, be estopped thereafter to allege its invalidity." Bigelow on Estop. [5 Ed.] 685.

Where the act under which an assignment was made was *unconstitutional* and void as to creditors whose demand existed prior to the passage of the act, still, they having come in and accepted dividends under the assignment were estopped to call on the stockholders for the payment of the residue of their debts not received under the assignment. *Van Hook v. Whitlock*, 26 Wend. 43.

In another case, the charter of a city provided that the city council should have power to cause streets to be opened, paved, etc., upon the petition of *not less* than two-thirds of the abutting owners, and it was held that a person who joined in such a petition was estopped from afterward claiming that the assessment of the tax for the improvement petitioned for was unauthorized, because two-thirds of the abutting owners did not join in the petition. *City of Burlington v. Gilbert*, 31 Iowa, 356.

Other cases announce this general proposition that where an unconstitutional statute has been procured by a person, or he has derived interest and consideration thereunder, that he cannot keep the consideration and repudiate the statute. *Daniels v. Tearney*, 102 U. S. 415 ; *Ferguson v. Landram*, 5 Bush. (Ky.) 230.

The point in hand is well illustrated in a very recent case in New York. The city sued to recover rent accrued under a lease of a certain pier, and the defendant put his defense on the sole ground that the lease had not been made in pursuance of any sale or

public auction of the privilege conferred as required by the statute; but it was ruled that this constituted no defense; that the defendant having enjoyed the benefit of the contract was estopped to deny its validity, and that the same rule applied in such circumstances to a municipal as well as another corporation. *Mayor, etc., v. Sonneborn*, 113 N. Y. 423.

The case of *Montgomery v. Road Co.*, 31 Ala. 76, is opposed to the foregoing views; but we are satisfied with their correctness. Besides, that case appears not to be in line as already seen with authorities elsewhere. Bigelow on Estop. [5 Ed.] 466, note.

We are unable to see why a defendant in a case of this sort should not be estopped from retaining benefits received by him under a contract though made *ultra vires* a municipal corporation, as he certainly would under similar circumstances were the other contracting party a natural person laboring under some legal disability.

In ruling thus, we give no sanction to a municipal corporation leaving the narrow pathway marked' out by its charter, nor do we intimate that we would enforce an *ultra vires* contract if *executory;* we merely hold that good morals and even-handed justice demand that the defendant should *disgorge.*

Moved by these considerations we affirm the judgment. All concur.