# Jacob Steckert et al. v. The City of East Saginaw et al.

*Assessments for public improvements: Recording vote: Description of improvement: Equitable estoppel: Interest of alderman: Powers and duties of commissioners: Charter of East Saginaw.* A statute,—charter of East Saginaw, *Laws of 1859, p. 971,*—which requires that the vote of a city council, in certain cases, shall be entered at large on their minutes, is designed to accomplish an important public purpose; it cannot be regarded as immaterial, nor its observance dispensed with. The record of a vote that it " was adopted unanimously on call,"—the names of those voting no otherwise appearing than by the statement of those present at the opening of the session, is not a compliance with the statute. Neither the spirit nor the purpose of the act can be satisfied without entries on the minutes showing who voted on each resolution embraced within the terms of the act, and how the vote of each was cast; in other words, the ayes and noes on each resolution must be entered at large on the minutes.

Petitioners to a city council for a public improvement will be presumed to intend that the work shall be done under the city charter ; and, while they will be estopped in equity to deny the power to grant their petition, —*Motz v. Detroit, 18 Mich., 495,*—yet, they will not be estopped to object that the proceedings upon their petition have been conducted in disregard of the law.

Knowledge, presumptive or actual, of the progress of a work of public improvement in a city will not estop a party from complaining of illegalities in the proceedings by which the work was authorized ; and, in the absence of any evidence of previous knowledge on his part of the unlawful action, he will be in time with his protest when proceedings are instituted to deprive him of his rights.

The vote of an alderman of a city council for a public improvement, for which he was as an individual was a petitioner, is not void.

The statute,—charter of East Saginaw, *Laws of 1859, p. 997,*—which requires the resolution of a city council, ordering a public improvement, to " describe the contemplated improvement," is substantially complied with when the order for the paving of a street described the improvement as " the paving of a street with the Nicholson pavement;" and this description will include, for the purpose contemplated by the act, such incidental work as the removal of the earth for paving and the setting of curb-stones.

The power conferred by the charter of East Saginaw upon the common council.—*Laws of 1859,* § 38, *p. 1011,*—when they shall have ordered any public improvement of "designating and directing three resident freeholders * * to make an assessment upon all the owners, etc., of the amount of expense in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire by making of such improvements," does not authorize the common council to give directions to the commissioners which shall govern them in making the assessment. It is the judgment of the commissioners, and not of the common council which is to determine this.

The provision of the charter of East Saginaw, as amended in· 1861,—*Laws of 1861,* § 40, *p. 50,*—which requires commissioners who are appointed to assess the expenses of public improvements to "make out an assessment roll on which shall be entered the names of the persons assessed, the value of the

property for which they are assessed, the amount assessed," etc.. must be regarded as mandatory, and an assessment roll .which omits to state the value of the property assessed cannot be sustained.

*Heard October 25, 26. Decided October 27.*

Appeal in Chancery from Saginaw Circuit.

.The bill in this cause was filed by Frederick A. Koehler, Jacob Steckert, Jay S. Curtis, John H. McFarlin, Frederick Hubert, John McKay, John Gallagher, William Gallagher, William Lloyd, Freeman G. Casey, DeWitt C. Gage, 'Ashael Jackson, Sarah L. Warford, Michael Jeffers, Solomon B. Bliss and Moses B. Hess, in the Circuit Court for the county of Saginaw, in chancery, against the city of East Saginaw, Charles V. DeLand, Controller, and Gilbert R. Chandler, Marshal of the city, to restrain the collection of an assessment levied by the city authorities for a public improvement, by paving Washington street with the Nicholson pavement. A preliminary injunction was granted on filing the bill. After the cause was at issue upon answer and replication, and before the proofs were taken, Frederick A. Koehler was permitted to discontinue by consent. Proofs were taken, and the cause was heard upon pleadings and proofs, and a decree entered making the injunction perpetual against proceeding to enforce the collection of the assessment, from which the defendants appeal to this court.

*John J. Wheeler* and *John Moore,* for complainants.

*Wm. Gillett* and *Wm. L. Webber,* for defendants.

Cooley, J.

This is a bill to restrain the collection of an assessment for paving Washington street, in the city of East Saginaw, with what is known as the Nicholson pavement. The complainants are owners of lots in said city upon which the

22 mich.—14.

assessment is a lien, and they ask for a perpetual injunction against its collection upon the ground that the proceedings to levy it have not been in accordance with the charter of the city, which prescribes the several steps to be taken in such cases.

The first ground of alleged invalidity in the proceedings is that the several votes in the common council ordering the improvement made, directing a contract therefor and the levy of an assessment for payment of the expense thereof, were not taken by ayes and noes as the charter requires.

The provision of the charter on this subject is that "Whenever required by two members, the votes of all the members of the common council, in relation to any act, proceeding or proposition, had at any meeting, shall be entered at large on the minutes; and such votes shall also be entered in relation to the adoption of any resolution or ordinance, report of a committee or other act, for taxing or assessing the citizens of said city, or involving the appropriation of public moneys."—*S. L. 1859, p. 971.*

The proceedings in question were such that the votes thereon were required, under this section, to be entered at large on the minutes whether specially required by two members or not. The defendants insist that this section has been complied with, in substance and in spirit, in every instance; while the complainants on the other hand argue that a disregard of its provisions is manifest throughout. Upon this point the evidence of the minutes must be conclusive, and if we find the votes entered there at large, the objection must fail.

On looking at the minutes we find that the votes have uniformly been entered and recorded in the same way; and we may therefore take the proceedings on any one of the several votes as a sample of them all. The vote ordering

the contract for paving the street to be entered into was had June 29th, 1868. The record of the meeting of the council on that evening begins as follows:

"Regular meeting, Monday evening, June 29th, 1868. The council met pursuant to adjournment. Present, Aldermen Buckhout, Carlisle, Eastman, Morley, Owen, Wood and Zimmerman.—7. By Alderman Carlisle, "Whereas," etc., [here follow the resolutions, after which is this minute], "Adopted unanimously on call."

Unless the minute is a compliance with the section of the charter in question, it is not claimed by the defendants that it has been complied with at all; but their argument is that the record shows, *first*, the names of the several aldermen who were present when this action was had; *second*, that the roll was called on the vote; and *third*, that each of them, when the roll was called, voted for the adoption of the resolutions. This being so, the vote is, in effect, entered at large on the minutes, and the repetition of the names of the aldermen in the minutes, when the precise position of each upon the resolutions submitted was already recorded, would have been only an idle ceremony, accomplishing no useful purpose.

We have found ourselves unable to take the same view of this record that is taken by the counsel for defendants. There can be no doubt that the provision of the statute which requires these votes to be entered at large on the minutes, was designed to accomplish an important public purpose, and that it cannot be regarded as immaterial, nor its observance be dispensed with.—*Spangler v. Jacoby, 14 Ill., 297; Supervisors of Schuyler Co. v. The People, 25 Ill., 183.* The purpose, among other things, is to make the members of the common council feel the responsibility of their action when these important measures are upon their passage, and to compel each member to bear his share in the

responsibility, by a record of his action which should not afterwards be open to dispute. Now if the record in the present case shows precisely who voted for the resolution in question, it is apparent that the object of the statute has been fulfilled, and we may be able to sustain the action, notwithstanding the compliance with its provisions has not been exactly literal.

We are of opinion that the record does not show with sufficient certainty that all the members present at roll-call, at the opening of the meeting in question, voted for the resolutions; and if it does not show that all did, it does not show that any particular one of them did. What it does show is, that at roll-call when the meeting was opened certain members named were present, and that afterwards, before the meeting adjourned, certain resolutions were adopted unanimously on call. Now if it were a legal presumption that all the members who were present at the call to order of such a meeting remained until its adjournment, and that no others came in and took their seats afterwards, and if it were also a presumption that every member voted on each resolution on roll-call, the argument of defendants would be complete, and we could say with legal certainty from this record that these resolutions were passed with the affirmative vote of each of the members named as present in the clerk's minutes of the meeting in question.

But surely there are no such presumptions of law, and if there were, they would be contradictory to the common experience of similar official bodies. It is very well known that it is neither observed nor expected that when a legislative body of any grade has commenced its daily session, the doors will be closed to prevent the ingress of members not prompt in arrival, or the egress of others who may have occasion to leave. The actual attendance on such a

body will frequently be found to change materially from hour to hour, so that a record that a vote was passed unanimously would be very slight evidence that any particular member present at the roll-call voted for it, or that any member not then present did not. And even if the record could be held to afford a presumption on that subject, its character must be so faint, doubtful, and unreliable as to subserve no valuable purpose. Moreover, the members actually present are usually allowed to vote or not to vote at their option, except in cases of close votes, or where an appeal is to be made to the people; and if the vote of a quorum is in favor of a resolution and no vote is cast against it, the record may still be that it was "adopted unanimously on call," though some of the members present abstained from voting.

What is designed by this statute is, to fix upon each member who takes part in the proceedings on these resolutions, the precise share of responsibility which he ought to bear, and that by such an unequivocal record that he shall never be able to deny either his participation or the character of his vote. But manifestly we cannot determine in the present case with any certainty that any one of the aldermen named—Alderman Buckhout, for example—actually voted for the resolutions in question. We know he was present when the council convened, but we have no record which points specifically to his individual action afterwards. Suppose he were to contest the tax as illegal, and the city authorities were to insist upon an equitable estoppel arising upon his vote in its favor, and he should deny such vote, we should look in vain in this record for anything absolutely inconsistent with such denial. Suppose his constituents, dissatisfied with this vote, undertake to call him to account for his participation, and he were to say to them, "I was not present when these resolutions were adopted;

I was indeed present when the council convened, but was called away soon after on private business;" this record plainly could not be relied upon to contradict his assertion. The persons arraigning him would be obliged, in order to fix his responsibility, to resort to the parol evidence of his associates or of bystanders. But the legislature understood very well the unsatisfactory character of that kind of evidence, and they did not intend that the power to call an alderman to account for misconduct, delinquencies, or errors of judgment in the performance of this official duty, should be left to depend upon it. They have imperatively required that there should be record evidence of a character that should not be open to contradiction, or subject to dispute; and their requirement cannot be complied with according to its terms, nor satisfied in its spirit and purpose, without entries in the minutes showing who voted on each resolution embraced by the section quoted from the charter, and how the vote of each was cast. In other words, the ayes and noes on each resolution must be entered at large on the minutes, so that the presence or participation of any member shall not be left to conjecture or inference.

It was frankly conceded on the argument by the counsel for the city, that if we reached this conclusion, the assessment in question must be declared void, unless the complainants could be held estopped from raising the objection on certain equitable grounds which were insisted upon. One of these grounds applies only to three of the complainants, and it consists in the fact that they were petitioners to the common council to have this very improvement made.

In *Motz v. Detroit, 18 Mich., 495,* we held that where parties petitioned the city authorities to have a certain improvement made which was provided for by the city charter and ordinances, they must be understood as request-

ing that it be done under such charter and ordinances, and if those turned out to be invalid, the petitioners were not entitled to set up such invalidity as a basis for equitable relief against the action which they had requested. The case before us, however, is of a different character. The complainants do not claim that the charter under which the assessment was made is void, but they complain that its provisions have not been followed. Three of the complainants admit asking that the improvement be made in accordance with the law, but they aver that the attempt has been made to construct it in disregard of the law, and that their interests are injuriously affected by the failure of the council to follow the statutory provisions. If they are correct in their facts, we do not see how they can be estopped from claiming relief.

The second ground of estoppel applies to all the complainants, and it consists in the fact that they were all residents of the city of East Saginaw, and presumptively cognizant of the proceedings being taken, and of the irregularities which existed, and yet made no complaint until the work was completed, though they knew that under the charter the contractor who did the work could only be paid from this assessment. This ground of estoppel appears to us to be rather far-reaching and somewhat dangerous. To hold that a man is bound at his peril to take notice of illegal action on the part of the public authorities, is carrying the doctrine of constructive notice very much farther than the authorities will warrant. We think, on the other hand, that the citizen has a right to assume that the law is being obeyed instead of violated, by the public authorities, and that, at least, in the absence of any evidence of previous knowledge on his part of their unlawful action, he is in time with his protest when they proceed to deprive him of his rights under such proceedings. We do not find,

therefore, that any principle of estoppel will preclude the complainants from the relief prayed.

As the views already expressed dispose of the case, we might, perhaps, with propriety abstain from going farther, but there are some other questions presented by the record which are liable to arise again, and therefore ought, in justice to the parties, to be disposed of now.

One ground of invalidity assigned by the complainants is, that two of the aldermen who formed a part of the quorum of the common council when important action was taken, and without whose presence and votes there would have been no quorum, were petitioners for the improvement, and owners of property liable to assessment therefor. The votes of these aldermen, it is claimed, were void, and consequently the action of the council, to which their votes were essential, was void also.

We think this objection without force. The action in question was legislative in character, and the interest these aldermen had in it was of precisely the same nature with that which every legislator has in a bill he votes for, which is to subject his property, in common with that of his fellow citizens, to taxation. They were laying down rules, which in their operation would affect alike and impartially their own interest and that of all others whose property would be taxed. Such an interest is calculated to make a man careful and solicitous for the public interest, with which his own is inseparably connected, instead of inclining him to vote recklessly or corruptly when burdens are to follow which he must share. None of the cases cited on the argument in this connection have any bearing. Those only decide that a man is not to be permitted to occupy inconsistent positions when his own interest is directly involved; but in no question here voted upon could these aldermen have discriminated between their personal interest

and that of the other tax-payers, except in fixing the taxing district; and as on that question if they voted at all it was against their apparent interest, and in favor of making the district which included their property the smallest possible, it is obvious that they did not by their vote place themselves in a position antagonistic to other tax-payers. If the common council acted as commissioners of apportionment in making the assessment upon the property that was to bear the burden, other considerations might be involved; but this charter designates a different tribunal for that purpose and prescribes great caution to insure impartiality. On the confirmation of the commissioners' report questions might have arisen in which the interest of these aldermen would have been direct and special; but no such appear by this record.

It is also objected that the resolution of the common council declaring the improvement contemplated to be necessary, is required by the charter (*Laws of 1859, p. 997*) to describe the improvement, while in the one adopted no sufficient description appears.

The contemplated improvement is only described as the paving of the street with the Nicholson pavement between specified termini. But we think this a sufficient compliance with the charter. The Nicholson pavement is a process well known and understood; and nothing but a very general description can be required or be important in this resolution. We also think that the removal of earth for the paving and the setting of curb-stones, concerning which some question is made by the bill, may properly be treated as incidental to this paving, and not as separate improvements requiring to be described and ordered specifically as such.

Two other objections are not so easy of disposition. One is that the resolution of the council, appointing com-

22 MICH.—15.

missioners to make an assessment of the expense of the improvement upon the property benefited, laid down a rule for their action which made it imperative on the commissioners to assess upon each lot the expense of paving in front of it, and allowed them no discretion to adopt any different basis of assessment if they regarded any other more equitable.

The resolution in question is of very uncertain construction, and we are not entirely satisfied that complainants are correct in the view they take of it. But it does not become necessary to decide this point, as in any event the decision cannot depend upon it. It is enough to say that, under the charter, the council have no power to give directions which shall govern the commissioners in making their assessment. The commissioners are " to make an assessment upon all the owners or occupants of lands and houses within the portion or part of the city so designated [by which is meant, within the taxing district previously designated by the common council], of the amount of expense in proportion as nearly as may be to the advantage which each shall be deemed to acquire by making of such improvements " (*Laws of 1859, p. 1011*); and it is their judgment and not that of the common council which is to determine whether the adjoining lots are benefited in proportion to their respective street fronts, or whether, on the other hand, the assessment ought not to be apportioned on some other basis than that of frontage.

The second objection just referred to is, that the commissioners, in their report of the assessment to the common council, did not report the valuation of the respective lots assessed. This is expressly required by the charter (*Laws 1861, p. 50*), but the defendants insist that the provision on this subject is merely directory, since it can subserve no valuable purpose when the assessments are not made on a

basis of valuation, and therefore the tax-payers have no interest in its being complied with.

We think, however, that the tax-payers may have an interest in its being complied with. The commissioners are not precluded from making their assessment with some reference to valuation; and as the common council review their action, and hear and decide complaints of inequality and injustice, the respective valuations of lots constitute important information to be possessed by them when proceeding to perform this duty. It is easy to see, where an assessment is made with reference mainly to frontage, that it might sometimes be exceedingly equitable to take valuation somewhat into account also, at least in exceptional cases; and we cannot say, therefore, that the requirement that the valuation shall be returned is not mandatory. We think all legislative provisions, in such cases, should be regarded as mandatory, where they seem to be adopted for the protection of the tax-payer, and may have an important influence in shielding him from unequal and unjust burdens.

For the reasons given we are constrained to affirm, with costs, the decree of the court below.

CAMPBELL, CH. J. and GRAVES, J. concurred.

CHRISTIANCY, J. did not sit in this case.