IN THE MATTER OF THE TAKING OF LANDS, ETC., FOR WIDENING CARLTON STREET BETWEEN MAIN AND JEFFERSON STREETS IN THE CITY OF BUFFALO.

*Charter of Buffalo — resolution for the taking of land, must appear by the journal of the Common Council to have been adopted by a two-third vote — ten days must elapse between the publication and the application for the appointment of commissioners.*

The charter of the city of Buffalo, in authorizing proceedings to take land, provides that after a certain notice has been given, the common council "may declare, by resolution, to be adopted *by a vote of two-thirds of its members,*" that the city has determined to take it. The charter also provides that when, by its terms, "a vote of more than a majority is required it shall be taken by the yeas and nays, which shall be entered on the journal."

*Held,* that to render a resolution, declaring that the city had determined to take land, valid, it must appear from the journal itself that it was adopted by a two-third vote, and that such fact could not be proved by extrinsic evidence.

The charter provided that upon the adoption of such a resolution, notice of the application for the appointment of commissioners of appraisement should be given "by publishing such notice daily, for two weeks in the official paper," by leaving a copy at each inhabited building on such land, and by personal service upon each owner, or by depositing it in the post-office, addressed to him "at least ten days before the time when the application is to be made."

*Held,* that at least ten days must elapse between the expiration of the two weeks of publication and the time of the application.

APPEAL by certain land owners from an order made at the Special Term of the Superior Court of the city of Buffalo.

*Joseph P. Carr,* for the land owners, appellants.

*Giles E. Stilwell,* for the city of Buffalo, respondent.

TALCOTT, J. :

This is an appeal from an order made by the Special Term of the Superior Court of the city of Buffalo. The hearing of the appeal has been transferred to this court on a certificate of the fact that two of the justices of the said Superior Court are disqualified to hear the same. The order appealed from was made at the Special Term of the said Superior Court, held on the 20th day of April, 1878, and vacated and set aside an order of the said Superior Court, made on the 26th of November, 1874, confirming a report of commissioners appointed by the said court on

the 18th day of September, 1874, to ascertain and report a just compensation to be paid to the owners of lands and property taken and appropriated for laying out Carlton street in said city, and the order appointing such commissioners. The proceedings for the taking of the lands and property for the laying out of said street, purported to be taken and had under title eighth of the revised charter of said city. (Session Laws of 1870, ch. 519, title 8.) The motion to vacate and set aside the order of confirmation was made on several grounds on behalf of the city and parties interested in the question ; but, as appears from the order, the motion was granted upon the ground " that the city of Buffalo never acquired jurisdiction, in this proceeding, of the lands affected thereby, so as to have the power to take the said lands." The main objections to the jurisdiction of the common council are two, namely : 1. That there was no legal vote of the body to lay out said street and to take the said lands for that purpose. 2. That no legal notice of such proceeding was given to the parties interested, as required by the charter.

Premising that it is a well-settled principle of law that where the right of eminent domain has been delegated to a municipal corporation, in order to the due exercise of that right it must, in all respects and in all proceedings, pursue the provisions of the act of the Legislature by which the power is delegated, and that no presumptions of regularity are to be made respecting such proceedings, but they must in all things conform at least substantially to the act of the Legislature, we will proceed to consider the objections to the jurisdiction of the common council above indicated.

Title eighth of the charter, which treats of eminent domain, and under which the proceedings purport to have been taken, provides as follows :

" Section 2. When it shall be intended to take any lands for any of said purposes or objects " (i. e., for streets, etc.), " the common council shall, by resolution, declare such intent and describe the lands to be taken. Upon such resolution becoming of force, the city clerk shall cause the same to be published in the official paper for two weeks."

" Section 3. Within three months after the expiration of the said publication the common council may declare, by resolution

to be adopted *by a vote of two-thirds of all its members*, that the city has determined to take such lands for such purpose."

Section two of title third of the same act provides as follows : 2. The common council shall determine the rules of its own proceedings, but when, by this act, a vote of more than a majority is required, it shall be taken by the yeas and nays, which shall be entered on the journal." " It shall  *  *  *  keep a journal of its proceedings and publish the same," etc.

In this case the vote required being more than a majority vote, viz., the vote of two-thirds of all the members elected to the common council, does not appear by its journal to have been taken by yeas and nays, and the journal does not contain any entry to that effect, and there is no evidence *aliunde* that the resolution was actually passed by a two-thirds vote, and the city attorney states that he believes that the said resolution was not passed by a two-thirds vote, and that it could be so established by evidence in a judicial investigation.   Even if evidence *aliunde* the journal were admissible to establish the fact that the resolution was passed by a two-thirds vote, no such evidence was offered. But no parol or other evidence, other than the journal of the proceedings of the common council, is admissible to establish the fact that the vote was a two-thirds vote.   The statute, in order to render this matter certain, has provided that in such case the vote shall be taken by yeas and nays, and that such votes shall be entered on the journal, and unless this thing is done the proceeding is void, and the only legal evidence that the resolution was passed by the requisite vote is the record of the proceedings of the common council, kept according to law.   (*Morrison* v. *City of Lawrence*, 98 Mass., 219; *Spangler* v. *Jacobi*, 14 Ill., 297–300; *Strecherte* v. *East Saginaw*, 22 Mich., 104; *Young* v. *St. Louis*, 47 Mo., 495.)   So that we think it is clear that the common council acquired no jurisdiction to take the lands specified in the resolution, for want of the requisite two-thirds vote by which the resolution was passed.

Again, section three of said title eight provides, that after the expiration of the publication of the notice of an intention to take the lands, as provided in section two, the common council may, by resolution to be adopted by a vote of two-thirds of all its

members, declare that the city has determined to take such lands for such purpose, and by section four, " upon such resolution becoming of force, the attorney shall give notice that the city has determined to take such lands, describing them, for such purpose, stating it, and that on a certain day, naming it, he will apply to a court to be held on that day in the city, naming the Court of Record, to which such application is to be made, for the appointment of three commissioners, to ascertain the just compensation to be made for such lands ; by publishing such notice daily for two weeks in the official paper ; by leaving a copy thereof at each inhabited building on such lands, with a person of full age, and by serving a copy thereof personally on each person who, by the records of the Erie county clerk's office, appears to be the owner or mortgagee of such lands, or any part of them, or by depositing it in the post-office in the city, with the postage prepaid, addressed to him at Buffalo, at least ten days before the time when the application is to be made."

These notices were to be given at least ten days before the time when the application for the appointment of the commissioners was to be made. The notice was first published, as it appears, on the first day of September in the year 1874, and the application therein specified was to be made on the eighteenth day of the same month, and the last day of the publication was on the fourteenth day of September. The notice itself was dated on the thirty-first day of August. The order of the Superior Court appointing the commission was made on the 18th day of September, 1874, which of course must have been within four days after the last day for the publication of the notice for such application. The notice to the parties in interest must be given, as specified by the act, and in strict conformity with its terms.

The counsel for the appellant claims that when the jurisdiction depends upon certain facts, and the court has passed upon such facts, the determination is conclusive until reversed. This cannot be true in regard to notices required to be given to a party to authorize the taking of his private property under the exercise of the delegated right of eminent domain. The notice which is required to be published was the only mode in which many of the parties, such as non-residents and foreign corporations, could

receive any information of the facts of which they are required by the act to be notified, and the determination of any tribunal that it has jurisdiction, by a proper service of notice upon the parties who are to be affected by the proceeding, is open to examination even in a collateral proceeding.

But it is to be noticed that the order of the 18th of September, 1874, appointing the commissioners in this case, does not purport to adjudge, either by recital or otherwise, the palpable absurdity that the notice of the application, publication of which was commenced on the first day of September, was published daily for two weeks, ending ten days before the application made on the eighteenth of the same month was made. On the contrary, the attorney who drew the order, in his recital of the facts concerning the notices, avoids stating anything in regard to the publication. We think the publication of the notice must be complete before the ten days commence to run, so that a party interested who might chance to see the notices on or near the last day of its publication, might still have time to procure himself to be represented before the court at which the commissioners are appointed. The case is analogous to the service by publication of a summons, in which case it is held that the twenty days to answer do not commence to run until the expiration of the six weeks publication. (See *Doughty* v. *Hope*, 1 N. Y., 79, followed in *Westbrook* v. *Willey*, 47 id., 457.)

The order of confirmation, even treating it as a judgment of the Superior Court, did not give any validity to the previous proceedings, which were void for want of jurisdiction. (*Doughty* v. *Hope*, 1 N. Y., 79.)

We think the Superior Court was not only justified, but called upon, to vacate its orders in the premises, which might otherwise greatly embarrass the city and the various parties interested in the lands supposed to have been taken, and in the assessments which followed thereupon.

The order of the Special Term of the Superior Court of Buffalo appealed from is affirmed, with ten dollars costs and disbursements, to be paid by appellants.

MULLIN, P. J., and SMITH, J., concurred.

Ordered accordingly.