## INFORMALITIES IN THE LEVYING OF A STREET ASSESSMENT

[Circuit Court of Lucas County.]

### HARRIET A. BLAIR v. C. K. CARY.

Decided, February 23, 1903.

*Assessment for Street Improvement—Excess of Benefits Need Not be Determined—Irregularities in Council Proceedings—Method of Recording Yea and Nay Vote—If Assessment Just, Method of Fixing it Unimportant—Valuation of Property Not Necessary, When —Tax Sales—Valid Title Can Not be Obtained Where Any of the Tax Was Illegally Imposed.*

1. An assessing committee of council having found and determined that the benefits accruing to all the property to be assessed on a street for a contemplated improvement is equal to the amount to be assessed thereon, it is not necessary to go further and determine the extent, if any, that the benefits will exceed the amount to be assessed; provided, that the amount to be assessed is equally apportioned and assessed, and that the assessment does not in the case of any particular lot exceed the benefits accruing thereto, nor its proportion of so much of the total benefits as equaled the total amount to be assessed.

2. When a just and equitable result has been obtained, and abutting lot owner will not be heard to complain because the method by which the result was reached was not scientific, or was informal, or even the result of an accident.

3. Although, in the opinion of the court, there is a better way of recording a yea and nay vote, yet where the record of the proceedings in council with reference to a street improvement resolution sets forth the names of the members present, and that a vote was taken and the resolutions adopted, and the number voting corresponds with the number whose attendance is noted, the validity of the action can not be successfully questioned.

4. A failure to fix a valuation of the property to be assessed does not render an assessment invalid, in a case where no valuation was required under Section 2272, and two-thirds of the property owners on the street signed the petition for the improvement, including the plaintiff.

PARKER, J.; HAYNES, J., and HULL, J., concur.

Heard on appeal.

Suit was brought in the court below by Harriet A. Blair, who was the owner of lot No. 21 and the westerly thirty feet of lot

No. 22, in the Virginia street addition to the city of Toledo, to have her title quieted as against certain claims against said property which were asserted by the defendant, Cary. It appears that the property had been sold by the treasurer of Lucas county at a delinquent tax sale to Cary, for the sum of $128.05, the same being the amount of taxes charged upon the tax duplicate of said county against the property for the year 1899; that in pursuance of this sale the auditor of the county issued and delivered to the defendant a certificate of purchase of said premises. It appears that a part of the taxes making up this amount were state, county and city taxes, for general purposes, for the year 1898, and a part of the amount was made up of fifteen per cent. penalty thereon, and part was state, county and city taxes for general purposes for the year 1899; and on account of an assessment for the paving of Virginia street, $73.40, and on account of an assessment for printing notices, $3.40.

Now it is averred in the petition—and this is not disputed—that a part of this general tax was levied because of a debt of the county arising out of the building of an armory in pursuance of ''an act to provide for acquiring land and building an armory in the county of Lucas, for the use of the Ohio National Guard, and to create a fund to pay for the same'' (87 O. L., 598). It also appears that that act has been held to be unconstitutional, and the levies to raise funds to discharge this debt have been held to be invalid; and in consequence thereof no valid title to property can be obtained at a tax sale where any of these taxes make up a part of the taxes on account of which the sale is made. So the defendant here does not undertake to claim title to the property, nor to enforce the collection of the penalty, nor to maintain his lien for the penalty. The contention in this case, therefore, is narrowed down to the assessment for the paving of Virginia street. It is contended on behalf of the plaintiff that this assessment is invalid—this assessment of $73.40 due and payable in the year 1899, for various reasons set forth in her petition. There are other installments of this assessment on account of the improvement of Virginia street by paving, for the years 1900, 1901, 1902 and 1903, the total of the amount of this assessment upon this

property being $281.06. The defendant paid this item of
$73.40 at the time he made this purchase. It appears, I believe,
that he has since paid one other installment, and he under-
takes to maintain his lien for these parts of this assessment
upon the Virginia street property. Now the plaintiff avers
that this assessment is invalid, "is null and void, for the
reason that said city council did not determine the value
of the premises, or any part thereof, hereinbefore described,
either in advance of said assessment or at the time of
making the same." Also, "that said assessment for the im-
provement of Virginia street was, in the first instance, made by
the assessing committee appointed by said city council, to make
an assessment in proportion to the special benefits conferred by
said improvement upon the lots and lands benefited thereby, in
pursuance of a resolution therefor, but plaintiff says that neither
said assessing committee nor said common council ever made a
total valuation of the special benefits conferred by said improve-
ment upon the lots and lands benefited by the same, as pro-
vided by law and by the resolution of said common council ap-
pointing said committee, for which reason said assessment is
wholly null and void."

Counsel for plaintiff in error contends that because the assess-
ing committee failed to ascertain and used as a basis for the ap-
portionment of the assessment the total of the benefits accruing
to the property on the street, the assessment can not, in the
nature of things, be correctly apportioned. He quotes the provi-
sions of Sections 2264 and 2277, Rev. Stat., relating thereto and
cites the case of *Chamberlain* v. *Cleveland,* 34 Ohio St., 551, and
urges that to meet the requirements of the statutes and the
rules laid down in this case, the sum of the benefits must be
ascertained and used as a basis in the mathematical problem nec-
essarily involved and submitted to the city council and assess-
ing committee for their solution. I quote from his brief:

"This proposition may be stated mathematically as follows:

| The whole special benefits | are to | the special benefit of a particular lot | as | the whole amount to be assessed | is to | the assessment on the particular lot. |
|---|---|---|---|---|---|---|

"But it is alleged in paragraph seven of the petition that neither the assessing committee nor the council ever made a valuation of the whole special benefits conferred by the improvement (and this allegation is denied in the amended answer as interlined, but the testimony supports the petition). It therefore follows that as the first term in the above proportion was never determined it was mathematically impossible to determine the fourth term."

Now the report of the assessing committee is as follows:

."We find that the estimated value of special benefits conferred upon the lots and lands set forth in the ordinance providing for said improvement, passed August 9, 1897, is equal in amount to the total estimated cost of said improvement, including incidental expenses thereof as reported herein. We find and report an estimated assessment upon the lots and lands set forth in said improvement ordinance passed August 9, 1897, which estimated assessment so reported herein made on the lots and parcels of land so assessed and is apportioned among the several lots or parcels of land specially benefited by said improvement in proportion that the special benefit to each lot or parcel of land bears to the whole special benefits conferred by said improvement. Said estimated assessment upon each lot or parcel of land so assessed and as reported herein, is based upon the value of special benefits conferred upon the same by said improvement, and does not exceed the same nor do they exceed the proportion of special benefits conferred upon each lot or parcel of land by said improvement, and said assessment, so made as aforesaid, is as follows:

[Among the list of property described appears the following: "Lot 21 and Wly 30 ft. lot 22 Virginia street Add (1899) $73.40, (1900) $55.42, (1901) $53.08, (1902) $50.75, (1903) $48.41, (total) $281.06."]

"Respectfully submitted,

"A. E. Forster,
"Geo. Vogel,
"John G. Keller,
         "*Committee.*

"Toledo, O., August 25, 1898.
"Confirmed October 10, 1898.
"Attest: Lem P. Harris, *City Clerk.*
"Ordinance to confirm assessment, Vol. T. Journal, p. 294.
"Yea and nay vote duly recorded council meeting October 3, 1898."

Keller and Forster, two of the assessing committee, testify orally as to the course they pursued in making the assessment. They agree in their statements, and it is agreed by council that Vogel, the third member of the committee, if called, would testify the same. They say, in substance, that they proceeded as follows:

1. They got the total cost of the improvement from the city civil engineer.

2. They obtained the descriptions of all the property to be assessed.

3. They ascertained the amount of benefits to each parcel and apportioned the same, having reference in so doing to the whole amount to be assessed. But they say that they ascertained and determined that the amount of benefits upon all the property to be assessed exceeded the total of the costs and expenses which they assessed thereon; that the amount of the assessment upon any parcel did not exceed in any case the benefits thereto nor its proportion of the amount assessed upon all the property. They also say that they determined the value of each lot so as not to exceed the limitation of twenty-five per cent., which they supposed they were required to observe—that is to say, that the assessment should not exceed twenty-five per cent. of the value of the property; that in estimating the benefits they viewed the property; they considered its location, the size and shape of each parcel, the extent of the frontage, the improvements thereon and the uses to which it was or might be devoted, and everything else that in their judgment had a proper and legitimate influence upon the estimate they were making of the benefits accruing thereto from the improvement, but they did not estimate the amount of benefits accruing to all the property upon the street and sum the same up or go through the arithmetical operation of adding the same and using the total as a basis for apportioning the benefits, and, finding that the benefits exceeded the amount to be assessed, they proceeded with that amount as a basis, taking no account of the excess of the total benefits over the total amount to be assessed.

Counsel for plaintiff in error relies very much upon the case of *Chamberlain* v. *Cleveland, supra.* We do not understand that

the court in that case attempted to lay down any certain rule, method, or *modus operandi* for apportioning such burdens or making such assessments, or that anything there held supports the contention of counsel that the total of the benefits accruing to all the property benefited and to be assessed must be ascertained and stated and used as a basis or as one of the terms of a mathematical problem to be worked out by the assessing committee or the council. The fundamental fault in the proceedings in that case manifest upon the record, was a failure to consider at all the question of benefits in making the assessments, and proceeding upon the assumption that the cost of the improvement was to be assessed upon the abutting property at all events.

In the case at bar the assessing committee having found and determined that the benefits accruing from the improvement to all the property upon the street to be assessed therefor was as much as the amount to be assessed thereon, we are of the opinion that it was not required to go farther and determine the extent, if any, that the benefits exceeded the amount to be assessed. In other words, if the total of the benefits to all the property exceeded the amount to be assessed, the amount of such excess was unimportant. It was only important that the amount to be assessed should be equitably apportioned and assessed, and that the assessment should not exceed, in the case of any particular lot, the benefits accruing thereto, nor its proportion of so much of the total benefits as equalled the whole amount to be assessed. This result they say they obtained. Whether they used it as the first term in the problem, as stated by counsel, the total of benefits to all the property, or only so much of the total benefits as they were required to apportion and assess, the result would be the same. In other words, if $20,000 were found to be the total of the benefits, and $15,000 the amount to be apportioned and assessed, it would follow that an amount equal to but seventy-five per cent. of the benefits accruing to each parcel should be assessed against the same. Proceeding to make the apportionment and assessment of the $15,000, if they considered the just proportions, they *necessarily* assessed upon each parcel but seventy-five per cent. of the benefits accruing thereto.

They report and they declare that they considered these elements of the problem, and that they obtained the results that in their judgment was right and just after giving full consideration and according full influence thereto; that they did not assess any parcel in excess of the benefit resulting thereto nor more than its just proportion of so much of the total benefits as equalled the amount to be assessed. This, as we understand it, is the substance of their report and testimony, and this we believe is a compliance with the spirit and the letter of the law.

But, even if this were not made to appear affirmatively, the plaintiff would not therefore be entitled to a decree against the enforcement of this assessment. In our judgment she must go farther than to show that the committee did not proceed by a certain or even by a prescribed method to attain the result. In order to entitle her to such relief at the hands of a court of equity she must make it appear that, in her case, a just and equitable result was not attained. Even though the method pursued by the committee, or the council, was not scientific, or was informal, if the amount assessed against their property did not exceed the benefits thereto resulting from the improvement, and did not exceed her just proportion of the benefits thereby resulting to all the property subject to assessment therefor, she has no ground of complaint.

Now it is admitted in the agreed statement upon which (as supplemented by oral evidence) the cause was submitted to us, that the whole amount assessed upon the property upon the street does not exceed the whole of the benefits thereto, and that the amount assessed against plaintiff's property does not exceed the benefits thereto; and she does not aver nor attempt to prove that the amount assessed against her property exceeds, or even equals its just proportion of the total benefits to all the property assessed; she simply avers that the committee or council never ascertained the total of benefits to all the property, and urges that because of this omission it was *mathematically* impossible for it to make a just distribution of the burdens.

Enough has been said to indicate our views upon that proposition; but, even if that were true, if a just result so far as

plaintiff is concerned had been attained by other than scientific methods, or even by accident, she is without ground of complaint, and it devolves upon her to show that her property has been over-assessed—that the law has been disregarded to her hurt and injury. In this she has totally failed; indeed, she has not attempted to make such a showing. We hold, therefore, that she is without just ground for complaint on this head.

The petition contains the averment that:

"Said contract was null and void for the reason that the resolution confirming it was not adopted by a yea and nay vote, nor were the yeas and nays on the adoption thereof entered upon the journal of said city council."

Section 1693, Rev. Stat., requires that the vote on the adoption of ordinances, resolutions and by-laws "shall be taken by yeas and nays, and recorded on the journal," and that the concurrence of a majority of all the qualified members of the legislative body shall be necessary to their adoption. The agreed statement of facts on that subject reads as follows:

"3. That there is recorded in volume K of resolutions, at page 213, the following:

" 'RESOLVED, By the common council of Toledo that the contract with F. E. Cole for the improvement of Virginia street, from Collingwood avenue to Lawrence avenue, by paving the central twenty feet thereof with Trinidad asphalt No. 1 laid on a foundation of concrete six inches thick to the established grade, and providing the necessary grading, curbing, drainage, etc., be and the same is hereby confirmed.

" 'Adopted October 11, 1897.

" 'Attest: Lem P. Harris,        Approved October 13, 1897.
      " 'City Clerk.        S. M. JONES, Mayor.'

"4. That the only records of the passage of the resolution set out in paragraph three above is the following, recorded in volume F of the journal of board of aldermen, at page 305:

" 'A resolution to confirm contract for the improvement of Virginia street, Collingwood avenue to Lawrence avenue, by paving, adopted, yeas, fifteen.'

"And the following recorded in volume S of the journal of the board of councilmen, at page 470:

" 'A resolution to confirm contract for the improvement of Virginia street, Collingwood avenue to Lawrence avenue, by paving, adopted, yeas, twenty-nine.'

"5. That the record of the meeting of the board of aldermen at which the resolution set out in paragraph four was passed shows that at the opening of said meeting the following members were present, to-wit: Bacon, Braunschweiger, Brown, Fellows, Jackson, Jefferson, Laden, Metz, Mathias, Roulet, Stewart, Sullivan, Valentine, Whalen and Meissner—fifteen.

"That the record of the meeting of the board of councilmen at which the resolution set out in paragraph four was passed shows that the opening of said meeting the following members were present, to-wit: Abele. Austin, Bretch, Calkins, Champion, Chase, Coleman, Connell, Dawson, Drane, Engelhart, Hales, Hoffman, James, King, Kraus, Masten, Roll, Reeves, Schneider, Schirks, Shovar, Stark, Truman, Wylie, and McAleese—twenty-seven; and that after said meeting was opened, and before said resolution was voted upon, the following members came in and took their seats, to-wit: VanLoo and Stevens."

It is urged that this does not show a compliance with the law, but that it discloses that the law was not complied with. In supporting this conclusion counsel cites *Steckert* v. *East Saginaw*, 22 Mich., 104. The statute there under consideration required that "the votes of all the members of the common council, in relation to any act, shall be entered at large on the minutes," and the record under consideration set forth the names of the councilmen attending, and that the resolution in question was "adopted unanimously on call."

In the case at bar it will be observed that the record says that certain yea and nay votes were taken, and the members are given, and the numbers correspond with the numbers of councilmen and aldermen in attendance, or whose attendance is noted. It is perhaps a fair inference, possibly a necessary conclusion, that all those named voted aye and that none other voted, or were present to vote. Nevertheless we do not mean to approve of the method of recording a yea and nay vote, and think that much that is said by Judge Cooley in his opinion in the case cited, is applicable to proceedings under our statute. He says, in part, page 107:

"Unless the minute is a compliance with the section of the charter in question, it is not claimed by the defendants that it has been complied with at all; but their argument is that the record shows, first, the names of the several aldermen who were

present when this action was had; second, that the roll was called on the vote; and, third, that each of them, when the roll was called, voted for the adoption of the resolutions. This being so, the vote is, in effect, entered at large on the minutes, and the repetition of the names of the aldermen in the minutes, when the precise position of each upon the resolutions submitted was already recorded, would have been only an idle ceremony, accomplishing no useful purpose.

"We have found ourselves unable to take the same view of this record that is taken by the counsel for defendants. There can be no doubt that the provision of the statute which requires these votes to be entered at large on the minutes, was designed to accomplish an important public purpose, and that it can not be regarded as immaterial, nor its observance be dispensed with (*Spangler* v. *Jacoby*, 14 Ill., 297; *Supervisors of Schuyler Co.* v. *People*, 25 Ill., 183). The purpose, among other things, is to make the members of the common council feel the responsibility of their action when these important measures are upon their passage, and to compel each member to bear his share in the responsibility by a record of his action, which should not afterwards be open to dispute. * * *

"What is designed by this statute is, to fix upon each member who takes part in the proceedings on these resolutions the precise share of responsibility which he ought to bear, and that by such an unequivocal record that he shall never be able to deny either his participation or the character of his vote. But manifestly we can not determine in the present case, with any certainty, that any one of the aldermen named—Alderman Buckhout, for example—actually voted for the resolutions in question. We know he was present when the council convened, but we have no record which points specifically to his individual action afterwards. Suppose he were to contest the tax as illegal, and the city authorities were to insist upon an equitable estoppel arising upon his vote in its favor, and he should deny such vote, we should look in vain in this record for anything absolutely inconsistent with such denial. Suppose his constituents, dissatisfied with this vote, undertake to call him to account for his participation, and he were to say to them, 'I was not present when these resolutions were adopted; I was indeed present when the council convened, but was called away soon after on private business'; this record plainly could not be relied upon to contradict his assertion. The persons arraigning him would be obliged, in order to fix his responsibility, to resort to the parol evidence of his associates or of by-standers. But the Legislature understood very well the unsatisfactory

character of that kind of evidence, and they did not intend that the power to call an alderman to account for misconduct, delinquencies or errors of judgment in the performance of this official duty, should be left to depend upon it. They have imperatively required that there should be record evidence of a character that should not be open to contradiction, or subject to dispute; and their requirement can not be complied with according to its terms, nor satisfied in its spirit and purpose, without entries in the minutes showing who voted on each resolution embraced by the section quoted from the charter, and how the vote of each was cast. In other words, the ayes and noes on each resolution must be entered at large on the minutes, so that the presence or participation of any member shall not be left to conjecture or inference."

It does not appear that these councilmen did not in fact all vote "aye" upon this resolution; it is only charged, and it only appears that they are not recorded as having voted in that way. If they in fact so voted, the resolution would have been regularly adopted to all intents and purposes so far as it affected the rights of all parties who could possibly have any interest in it, even though the record did not affirmatively disclose the fact. As was decided in the case of *Drott* v. *Village of Riverside*, 4 C. C., 312, where a certain resolution embodying a contract did not appear to have been adopted at all, the fact that it was adopted might be shown by parol. Of course it would not be within the power of the city to defeat the rights of the contractors because of a failure of the recording clerk to make correct minutes of the transactions of the councilmen.

But, even if we should adopt the rule laid down in the Michigan case referred to, we can not see that the plaintiff may insist that a duty to her rested upon the city to deny payment under this contract, and that the city might have done so successfully and thereby relieved the plaintiff of the burden of the assessment; and it seems to us that this should be made to appear, in order to justify the contention of the plaintiff here that this assessment should be held invalid; that is to say, it should appear to us that the duty rested upon the city to declare that it had assumed no obligation and to refuse to pay anything to the contractor for furnishing material and labor for making the

improvement after it had stood by allowing these things to be furnished, and that the city could have successfully maintained that position, in order to allow the plaintiff to maintain her contention here under that head; and we are of the opinion that neither of these is true. We are not cited to any authority, and we have searched for none, but we do not believe that the city could stand by and allow this work to be done in pursuance of a contract and afterward successfully resist payment on the ground and because of an informality on the part of the council in adopting the contract, even if it were true that that informality existed, and we do not think it was a duty which rested upon the city to interpose such defense for the benefit of the plaintiff and others upon that street.

It is said, in the third place, that the assessment was invalid because the value of the property was never fixed by the council, so that no twenty-five per cent. limit could be observed, reference being had to Section 2270, Rev. Stat., which requires that an assessment shall not exceed twenty-five per cent. of the value of the property to be assessed. It does not appear to us that any valuation of the property was required in this case. It was held in the case of *Strauss* v. *Cincinnati*, 23 Bull., 359, by the superior court of that city, that a failure to fix a valuation did not render an assessment invalid in a case where it was required; and that holding was confirmed by the superior court at the general term, the report of the affirmance appearing in 24 Bull., 422; and if a valuation were required here, we would be inclined to the views expressed by the court in that case; but it seems to us that no valuation was required here (although the assessing committee say that they did consider the value of the property and were careful not to exceed the twenty-five per cent. limit), because of the express provision in Section 2272, Rev. Stat., applicable to this case. I read from the latter part of that section:

"Provided, that in cities of the third grade of the first class, when a petition has been regularly presented to the council, asking for the improvement of a street or alley, and the lot or land of one who subscribed said petition is assessed, said assessment shall be a valid lien against said lot or land for the

full amount of said assessment, although it may exceed said twenty-five per centum of the value thereof."

Now it appears that this petition was not only signed by two-thirds of the property owners upon the street, but that it was signed by the plaintiff in error as well, and this language of the statute, it seems to us, is very clear and capable of but a single construction.

It is urged by counsel for plaintiff in error that the case of *Birdseye* v. *Village of Clyde,* 61 Ohio St., 27, is in point here and has some influence upon the construction of this provision of Section 2272, Rev. Stat., but we can not so understand it, and we do not think that is true. In that case the act under consideration was a special act for the city of Clyde, and it contained no limitation whatever; it did not contain a provision, as this section does, that the assessment should be a valid lien against the property, although it might exceed twenty-five per centum of the value; it contained no provision upon the subject.

Our construction of the law was that that being the only act invoked (the petition being under the act), and it containing no limitation, there was no limitation, and that, therefore, they might disregard the twenty-five per cent. limitation fixed in Section 2270, Rev. Stat. The Supreme Court, however, took a different view; it held that in the absence of any express provision, the limitation fixed by Section 2270, Rev. Stat., should be read into it and be considered as a part of the act, and that for the protection of persons proceeding under that special act as well as others. But here we have a case of an express provision applicable to the city of Toledo to the effect that notwithstanding an assessment may exceed twenty-five per cent. of the value, it shall be valid as against persons signing the petition; and we think, therefore, that the plaintiff has no ground of complaint upon that score.

We have tried to give this matter careful consideration, but we do not arrive at the conclusion which the court below seems to have reached in respect to this assessment. We see no ground for impeaching its validity, and we hold that it is valid; that

the plaintiff has a right to have her title quieted as against the penalty and as against the assessment on account of the bonds issued for the armory, but not as against this assessment. The judgment will be the same as in the court below, with the addition to the claim of the defendant of this assessment, and the costs in this court will be adjudged against the plaintiff, and the costs in the court below we think should be paid by the parties equally, *i. e.*, each one-half thereof.

*B. A. Hayes*, for plaintiff.

*F. S. Monnett* and *N. O. Winter*, for defendant.