Vol. 121.]    JANUARY TERM, 1906.    775

Board of Education of City of Newport v. Newport National Bank.

Case 96.—ACTION BY NEWPORT NATIONAL BANK AGAINST
THE BOARD OF EDUCATION OF THE CITY OF NEW-
PORT FOR DAMAGES FOR VIOLATION OF A CONTRACT.
—January 18.

# Board of Education of City of Newport v. Newport National Bank.

Appeal from Campbell Circuit Court.

JOHN T. HODGE and A. S. BERRY Successive Judges.

Judgment for plaintiff. Defendant appeals. Re-
versed.

1. Schools—Contract by Board of Education—Form of Vote—
Under Ky. Stats. 1903, sec. 3212, providing that for the exe-
cution of a contract by the board of education of a city
the concurrence-of a majority of its members "shall be indis-
pensable, and on a call for the yeas and nays, to be entered
of record," the vote must in all cases be on call of the yeas
and nays, and not merely where so demanded by a member.

2. Same—Record of Vote—The record of a meeting of a board
of education of a city, showing the requisite number of
members for transaction of business present when the meet-
ing commenced, and that afterwards a resolution for a con-
tract was unanimously adopted, is not a sufficient compli-
ance with Ky. Stats. 1903, sec. 3212, requiring the resolution
to be on a call of the yeas and nays, to be entered of record.

JAMES C. WRIGHT for appellant.

1. The resolution, the sole bases of this alleged contract, was
introduced at a special meeting of the board of education called
to consider reports from the Law and Building Committees, and
a full membership was not present.

2. The resolution was never adopted or approved as the act of
the board of education.

3. There was no call of the ayes and nays at the meeting of
February 9, 1900, or at the meeting of March 8, 1900.

4. There is no attack on the accuracy or integrity of the min-
utes.

#### AUTHORITIES CITED.

Scott v. Pendley, 24 Ky. Law Rep., 1432; Saunders v. O'Banion & Pence, 27 Ky. Law Rep., 1167; Ky. Stats., sec. 3212; Kaye v. Hall, 13 B. Mon., 458; Steckert v. City of. East Saginaw, 22 Mich., 104; Town of Olin v. Myers, 55 Iowa, 209; City of Covington v. Ludlow, 1 Met., 298.

L. J. CRAWFORD and R. W. NELSON for appellee.

#### PROPOSITIONS ADVANCED AND AUTHORITIES CITED.

1st. Appellee had power to buy bonds. (Newport National Bank v. Board of Education of Newport, 24 Ky. Law Rep., 876.)

2d. The first verdict properly set aside.

(a.) Two jurymen under obligations to appellant failed to make same known.

(b.) Verdict contrary to the evidence.

3d. Minutes of appellant show bonds were sold to appellee.

4th. Special meeting for "the consideration of miscellaneous business" broad enough to cover bond sale.

5th. Presumption that officers who called meeting did their duty. (McQuillin on the Law of Municipal Ordinances, Ed. 1904, sec. 94; Am. & Eng. Ency. of Law, vol. 15, p. 1034; Ibid notes on page 1035.)

6th. Call of yeas and nays not necessary. (See 3212, Ky. Stats.)

7th. Contract made pursuant to direction of appellant is not nullified by failure to approve minutes.

8th. Board that approves a minute may change it. (McQuillin on the Law of Municipal Ordinances, Ed. 1904, secs. 130 and 131.)

9th. Members of committee testified only as to what they did by direction of the board.

10th. Appellant's proposition, to-wit: No sale because bonds not in existence, is unsound. (Benjamin on Sales, Ed. 1892, sec. 78; Ibid. [American Notes], p. 86.)

11th. Verdict not excessive.

OPINION BY JUDGE BARKER—Reversing.

This action was instituted by the Newport National Bank to recover of the board of education of Newport, Ky., the sum of $3,000 in damages alleged to have been sustained by the violation of a contract to sell it $27,200 of refunding bonds. The facts, briefly, in so far as they are essential to a proper

appreciation of the issues between the parties, are
as follows: The board of education, being unable to
meet its outstanding indebtedness about to mature,
desired to refund it.   This was to be accomplished
by the sale of $27,200 of new bonds, the proceeds of
which were to be used in paying off the matured ob-
ligations.   To effect this plan, the finance committee,
consisting of three members, were authorized to se-
cure bids for the bonds to be issued.   In pursuance
of this arrangement the committee opened negotia-
tions with the bank, and secured from it an offer to
purchase the whole of the proposed issue for the
sum of $27,945.   This offer was reported back to the
board by the finance committee, and it is claimed by
the bank that the offer was accepted as made, thus
perfecting the contract sued on.     Afterwards, for
reasons not necessary to be here set forth, the board
sold the whole issue of bonds to other parties, refus-
ing to carry out the alleged contract with the bank,
and this constitutes the basis of the action under dis-
cussion.

The first question with which we are confronted
is whether the action of the board, upon which the
bank relies as an acceptance of its offer of purchase,
was in such compliance with the statute regulating
its official acts as to constitute a valid contract.   In
order to get the powers of the board with reference
to its right to contract properly before us, we deem
it essential to insert the whole of section 3212, Ky.
Stats. 1903, which contains all of the statutory regu-
lations concerning the powers of the appellant to
bind itself by contract:

"Sec. 3212. There shall be maintained a system of
public schools at which all children who are bona fide
residents of the city between the ages of six and

twenty years may be taught at, the public expense,. and schools may be opened as a part of said system to teach children of the ages of four, five and six years, by the kindergarten method. Said schools shall be under the control of a board, to be styled the board of education, consisting of two trustees from each ward in the city, to be elected, however, by the qualified voters at large of the city. Said board of education shall continue, and they are hereby declared, a body politic and corporate, under the name and style of 'Board of Education,' with perpetual succession; and by that name may contract and be contracted with, sue and be sued, have and use a corporate seal, the same to alter or renew at pleasure; may purchase, receive, hold, lease and dispose of real and personal estate for public school purposes. The control and management of the public schools of the city, and the property and funds thereunto belonging, shall be, and is hereby, vested in said board subject to the provisions of this act. They shall have power to make by-laws and rules, not in conflict herewith, necessary for the discharge of their duties and the government of their proceedings. They shall meet once in each month, or oftener, if necessary, but it shall require a majority of the members-elect of said board to constitute a quorum for the transaction of business and for the appropriation of money or the execution of a contract; the concurrence of a majority of the members-elect of said board shall be indispensable, and upon a call for the yeas and nays to be entered of record. The meetings of said board shall be held in some, public place, and a correct record of their proceedings shall be kept in a book provided for that purpose, which shall be a public record, and open to inspection by any officer or citizen of the city."

The language of the foregoing section, upon which rests the question whether the board of education made a valid contract with the bank, is as follows: "They shall meet once in each month, or oftener, if necessary, but it shall require a majority of the members-elect of said board to constitute a quorum for the transaction of business and for the appropriation of money or the execution of a contract; the concurrence of a majority of the members-elect of said board shall be indispensable, and upon a call for the yeas and nays, to be entered of record." The board of education contends that, in order to make a lawful contract, it was necessary that its official acts should be taken by call of the yeas and nays, evidenced by the official entry upon the record. It is not disputed that the proceedings of the board are required, by the language of section 3212, supra, to be kept in a book provided for that purpose, which constitutes a public record open to all. Therefore, if appellant's contention that it could only bind itself in a valid contract by a procedure upon call of the yeas and nays, is correct, it can not be controverted as a principle of law that that procedure must be evidenced by the record itself.

While it does not necessarily affect the precise question we have before us for adjudication, it is obvious there is an error in the punctuation of the excerpt from section 3212, supra. The semicolon following the word "contract" should be after the word "business," making that part of the sentence read: * * * "It shall require a majority of the members-elect of said board to constitute a quorum for the transaction of business; and for the appropriation of money or the execution of a contract the concurrence of a majority of the members-elect of said

board shall be indispensable, and upon a call for the yeas and nays to be entered of record.'' This keeps the two ideas of (1) what shall constitute a quorum and (2) how a vote appropriating money or making a contract should be taken and evidenced separate, instead of confusedly running them into each other, as is done by the erroneous punctuation above pointed out. This, as said before, is so obvious as to need no special elucidation, and still leaves us confronted with the proposition of what the Legislature meant by the language, ''and for the appropriation of money or the execution of a contract the concurrence of a majority of the members-elect of said board shall be indispensable, and upon a call for the yeas and nays, to be entered of record.'' The appellee insists that this language means the vote to be taken by a call of the ''yeas and nays'' only when demanded by some member. On the other hand, appellant, as before said, contends that, for appropriating money and executing contracts, the procedure of the board must be upon a call of the ''yeas and nays.'' This is an important question, and its proper adjudication means much to the taxpayers of the municipality whose representatives are empowered by the statute to dispose of the money devoted to the education of their children.

It may be conceded at the outset that, if the words are merely considered by themselves, there is some doubt as to their proper meaning. But, when considered under the light of the ordinary canons of statutory construction, there is little difficulty in reaching the intent of the Legislature. We are not, in the first place, to presume that the lawmakers intended to enact a vain and useless proceeding; and when it is plain that it is essential to appellant's

. making a contract to have a concurrence of a majority of the members-elect, as is conclusively shown by the use of the expression "shall be indispensable," we have no difficulty in reaching the conclusion that, by the rest of the sentence, it was meant to evidence the doing of the indispensable in a way to preclude mistake or uncertainty. Now it is evident that it would be very difficult, if not impossible if the vote was taken by the chairman putting the question to the body as a whole, for acceptance or rejection, to tell whether or not a majority of the members-elect voted in favor of a given contract. To illustrate: There are twelve "members-elect" constituting the appellant board. Assuming all of them present, if a proposition to enter into a contract was put to the board in the ordinary way, to wit, "all who favor the motion will say 'Aye,' and all who oppose say 'No,'" the respective sides voting at once, it would be difficult, if not impossible, to say that seven members voted for and five against the measure; but upon a call of the roll and the recording of each vote as taken the difficulty vanishes, and certainty is attained. It must not be presumed that the Legislature meant to leave so indispensable a matter to the contingency of a call for the "yeas and nays" by some member. The object of the call for the "yeas and nays" is to make it possible to hold each member responsible to the proper tribunal for his vote on any given proposition. It would seriously militate against the power of the constituents to hold their representatives responsible for their acts to leave the question of evidencing the votes to the very persons whose official acts are supposed to need oversight. This power to oversee the acts of their representatives is of great importance to the people, and

one of the surest safeguards against official corruption and breach of trust. And if we felt more doubt than we now entertain as to the correctness of the meaning of the language we have here for construction, we should feel constrained, in the interest of a sound public policy, to reach the conclusion making public espionage possible. All doubt should be resolved in favor of the people, and this is done in the case at bar by placing in their hands the power to hold their servants to a strict accountability for their official acts.

The original minute of the procedure of the board of February 9, 1900, shows that the finance committee presented an offer from a banking institution for the purchase of the refunding bonds at the price of $27,945, and the committee recommended the "40-20 year option plan," and a motion was made that the recommendation of the finance committee be concurred in, which was "agreed to." Subsequently, on March 5, 1900, this minute was sought to be corrected by adding to it a recital that the recommendation was unanimously adopted. Assuming that this amendment to the minute was properly passed by the board at the meeting of March 5, 1900 (which we think is doubtful), the recitation that the original proposition was unanimously agreed to does not cure the defect. It is true the minutes show that at the opening of the board there were present a sufficient number of the members to constitute a quorum, and if they unanimously voted in favor of the acceptance of the bank's proposition the requirements of the statute would be substantially complied with so far as the requisite number was concerned. But it does not follow that, because there was a statutory quorum at the opening of the board, all these members remained until the proposition of the bank came up for accept-

ance or rejection.  Common experience teaches that the contrary is usually true.  The members of deliberative bodies come and go, and often, when there is not a call for the "yeas and nays," business is transacted with less than a quorum present.  It is said that the General Statutes were passed in the House of Representatives of Kentucky by "unanimous vote," with only five members present.  Whether this be true or not is immaterial.  For the purpose of illustration, it might have happened, and this is sufficient.  The very question we have here arose in the case of Steckert v. East Saginaw, 22 Mich., 104, and the proposition that where the record shows the requisite number of members of the general council present when the board opened for business, and that afterwards a resolution was unanimously adopted, was a sufficient compliance with the law which required the resolution to be passed upon a call of the "yeas and nays," was met and overthrown by Judge Cooley, in an opinion in every way worthy of that great jurist.  We can add nothing to the logic of his opinion, contenting ourselves with saying of it, as was said of the opinions of Chief Justice Shaw, "they equaled a mathematical demonstration."

As the record in the case before us shows that the vote by which it is claimed the offer of the bank was accepted by the board was not taken upon a call of the "yeas and nays," recorded as required by the statute, it follows that there was no contract made with the appellee bank, and consequently the cause of action relied upon fails.

As the bank obtained a verdict against the board on the trial below, it results, from the views we have above expressed, that the judgment must be reversed for proceedings consistent herewith, and it is so ordered.